NORTH TEXAS CONSTRUCTION COMPANY v. SAN JACINTO OIL COMPANY ET. AL.

Decided April 14, 1906.

**1.—Contract to Furnish Oil—Construction.**

The defendant oil company, owning flowing wells in the Beaumont oil fields, entered into a contract with the plaintiff to furnish it with Beaumont crude oil, as required, to be delivered at certain railroad points in Texas at which the plaintiff owned gins, "for a term of three years, or as long as the Beaumont wells are flowing," at a stipulated price per barrel. Held, that by the very terms of the contract the defendant oil company was relieved of any obligation to furnish oil after the oil wells ceased to flow, and it appearing from the undisputed evidence that said wells had ceased to flow before defendant made default in furnishing oil, the court did not err in instructing a verdict for defendant.

**2.—Same—Waiver.**

The fact that after its wells had ceased to flow, a new flowing well was brought in by defendant, and defendant offered to resume the shipment of oil to plaintiff as long as this well continued to flow, which offer was accepted and oil was thereafter furnished until an order, manifestly in excess of the *bona fide* needs of plaintiff was made and declined, did not cause defendant to lose the immunity the cessation of the oil wells had already given it, nor did it thereby incur any new liability.

**3.—Same—Same.**

Where the defendant contracted to furnish plaintiff with crude Beaumont oil "as required" at its several gin plants, it was not thereby bound to furnish plaintiff "any quantity of oil it saw fit to order" where the quantity ordered was clearly in excess of its needs. Such construction would render the contract unilateral and unenforceable.

Error from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*A. M. Carter,* for plaintiff in error.—The contract sued upon bound

the oil company to furnish the appellant with all the crude petroleum necessary to operate its gin plants at all the points mentioned in the contract for the full period of three years, and did not mean that it was to furnish the said oil for said gin plants only as long as the Beaumont wells were flowing. Robinson v. Brinson, 20 Texas, 438; Dumont v. United States, 98 U. S., 143; United States v. Fisk, 3 Wal., 447; 2 Parsons on Contracts, bottom page 614, star page 497.

The evidence in this case shows that the Beaumont wells ceased to flow before the 24th day of July, 1902, and that the defendant oil company's own well ceased to flow some time in May, 1902. That long thereafterwards, some time in the latter part of July, 1902, and at various times from that time forward, up to September 2, 1902, appellant ordered oil of the oil company on said contract, and that it delivered some oil on said contract for some time after oil wells had ceased to flow, This was a construction by the parties to the contract to the effect that notwithstanding the Beaumont oil wells had ceased to flow, that nevertheless the said San Jacinto Oil Company was bound to furnish the oil on the contract, and the court will give this construction to the contract, if it is doubtful as to the length of time it was to run, as the same is the best evidence that the parties understood it was not limited to the time the Beaumont wells were flowing oil. San Antonio Street Ry. Co. v. Adams, 87 Texas, 131; Galveston, etc., Ry. Co. v. Johnson, 74 Texas, 263; Tobler v. Willis, 59 Texas, 82; Gee v. Burt, 33 S. W. Rep., 553; 9 Cyc., pp. 588-590.

*Capps & Canty* and *A. B. Flanary* and *Burgess & Burgess,* for defendant in error.—The uncontradicted evidence showing that the Beaumont wells ceased to flow prior to any default on the part of the defendant oil company, it was the duty of the court to instruct the jury for the defendants. Ontario Fruit Growers' Assn. v. Packing Co., 53 Law Rep. Ann., 681; Stewart v. Stone, 14 Law Rep. Ann., 215; Benjamin on Sales, sec. 576; Taylor on Evidence, secs. 1194-1195; Taylor v. McNutt, 58 Texas, 71; Benjamin on Sales, 213; Kilgore v. Northwestern Texas B. E. Assn., 90 Texas, 139; Litchenstein v. Brooks, 75 Texas, 196; Mallory v. Dawson Cotton Oil Co., 74 S. W. Rep., 953.

The contract declared upon being unilateral and without consideration, the same was not enforcible, and it was the duty of the court to instruct the jury for the defendant. Houston & T. C. Ry. Co. v. Mitchell, 38 Texas, 85; El Paso Gas Co., etc., v. City of El Paso, 54 S. W. Rep., 798; American, etc., Oil Co. v. Kirk, 68 Fed. Rep., 794; Roberts v. McFaddin, 74 S. W. Rep., 105; Hoffman v. Maffioli, 47 Law Rep. Ann., 427; Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 57 Law Rep. Ann., 696; Campbell v. Lambert, 51 Am. Rep., 1; Bailey v. Austrian, 19 Minn., 535; Keller v. Ybarru, 3 Cal., 147; Drake v. Vorse, 52 Iowa, 417; Wells v. Alexandre, 15 Law Rep. Ann., 218.

STEPHENS, ASSOCIATE JUSTICE.—By the terms of the contract declared on in this case between the San Jacinto Oil Company and the North Texas Construction Company, with the Fidelity and Deposit Company of Maryland as surety for the San Jacinto Oil Company, dated January 3, 1902, but which did not take effect until in March

following, when the bond, dated February 10, 1902, of the surety company was accepted by the North Texas Construction Company, the San Jacinto Oil Company agreed to furnish to the North Texas Construction Company "Beaumont crude oil, as required, to be delivered at" twenty-one railroad points in Texas therein named, at most of which it had cotton gins, and at "such other points in Texas at which the North Texas Construction Company may (might) acquire gins, provided such gins be at railroad points, as ordered, for the term of three years, or as long as the Beaumont wells are (were) flowing, beginning July 1, 1902, at 4½ cents per barrel of 42 gallons each, in tank car lots," and further agreed to give to the North Texas Construction Company a bond in the sum of $20,000 in a reliable security company to indemnify said North Texas Construction Company against any loss it might sustain "on account of failure of the San Jacinto Oil Company to conform to this contract, said loss to be limited to one thousand dollars ($1,000) at any one plant of the said North Texas Construction Company." The North Texas Construction Company obligated itself to give notice to the San Jacinto Oil Company "at least fifteen days previous to time specified for delivery of said oil, and to receive said oil promptly from the transportation company, and to pay for oil at the price" named as each shipment was made. The contract also contained the following provision: "It is further agreed and understood that this contract is not voidable except by acts of God, accident to oil wells, government interference, fire or strikes, affecting either party to this contract." The bond executed in pursuance of this contract, which bond was also declared on, expressly provided that the surety company was not to be held liable "for any damages accruing by reason of the non-delivery of said crude oil after the period of twelve calendar months, beginning July 1, 1902." In this bond the North Texas Construction Company was placed under obligation to promptly notify the surety company of any default on the part of the oil company.

The issue tendered by the petition of the North Texas Construction Company, filed originally in the District Court of Dallas County,———— day of October, 1902, was finally tried in the District Court of Tarrant County as an intervention in the suit there brought, January 16, 1903, by the Texas Cotton Products Company against the San Jacinto Oil Company, in which a receiver and master in chancery were appointed. The claim was referred to the master, who made report thereon and recommended a judgment in favor of intervener in the sum of $1,701.90. This report was excepted to by both parties, and at the instance of the oil company the case was placed on the jury docket, over the objection of the North Texas Construction Company. The case went to trial before a jury, but at the conclusion of the evidence and argument of counsel the court instructed a verdict for the oil company, and from the judgment thereon this writ of error is prosecuted.

Error is first assigned to the peremptory instruction: (1) Because the master's report made a *prima facie* case for the North Texas Construction Company and entitled it to have the issue submitted to the jury. (2) Because the evidence outside of the report tended to prove the allegations of its plea of intervention.

In the next assignment it is insisted that the court erred in not taking the case from the jury and rendering judgment for plaintiff in error for the full amount claimed as shown by the evidence, to wit, $18,572.84.

In the third assignment it is said: "The District Court erred in placing this case on the jury docket and then overruling the motion of the intervener, North Texas Construction Company, to strike this case from the jury docket and in trying it by a jury," the contention being that since the matter in controversy had been referred to the master, who had made a report thereon to which the respective parties had filed exceptions, the case was no longer triable by a jury, "but by the court."

Inasmuch as the court finally took the case from the jury and rendered judgment on the master's report and the established facts, we will not stop to consider whether the case should or should not have been previously treated as a jury case, but, discarding the question of practice attempted to be raised, proceed at once to inquire whether or not the judgment was erroneous.

Reading the findings of the master in the light of the evidence, which findings would otherwise seem in some respects ambiguous, if not conflicting, and considering the admitted and incontestible facts, we have reached the conclusion that plaintiff in error, so far from being entitled to the large judgment claimed, was not even entitled to the comparatively small one recommended by the master. This conclusion involves first of all a construction of the contract. Inasmuch as the Beaumont wells, both according to the findings of the master and the undisputed facts in evidence, ceased to be flowing wells long before even twelve months of the period named in the contract had ended, and for that reason, or at least because its own wells had ceased to flow, the San Jacinto Oil Company declined as early as August or September, 1902, to furnish any more oil under the contract, we will first consider the meaning of the language used to express its obligation to furnish oil "for the term of three years, or as long as the Beaumont wells are flowing." The master found "from the language of the contract and the circumstances and conditions surrounding the parties at the time they entered into it, as shown by the testimony, that it was not obligatory upon defendant to furnish the oil contracted for after the Beaumont wells had ceased to flow, whether such cessation was before or after the expiration of three years from the time the contract became effective." That this conclusion was warranted there seems little or no room to doubt, and we do not hesitate to adopt it. The master, however, further found that the San Jacinto Oil Company "by its conduct and declarations construed the contract to be effective and binding on it so long as its wells or some of them were flowing," which, with other findings, led to the conclusion that the intervener was entitled to a judgment, but the view we take of the case renders this finding immaterial, in view of other findings and the admitted and incontestible facts now to be noticed. The master found that "the Beaumont wells were not flowing after the month of July, 1902, as shown by all the testimony, until the new well of defendant was brought in, which began to produce oil by flowing about November 1, 1902, and ceased to flow about January 5, 1903," and that the testimony did not "show any other flowing

wells in the Beaumont field after the 1st of August, 1902." He found that the oil company, notwithstanding it had declined in August and September, 1902, to furnish any more oil, because of the failure of its wells, on November 14, 1902, after the new well had begun to produce oil, offered to resume the shipment of oil to intervener as long as this well continued to flow, which offer was accepted, and the orders of intervener thereafter seem to have been filled until one for 160 cars was made, December 22, 1902, which was declined and no further orders were made. But evidently this order was in excess of the needs of the several gins provided for in the contract and the oil company had a right to decline it, unless we give the contract the construction given it and insisted on at the time by the general manager, F. A. Blain, of plaintiff in error, that it gave his company the right to any quantity of oil it saw fit to order, which would render the contract clearly unilateral and unenforceable. It is not very clear from the findings of the master when the oil company first made default in its undertaking to furnish oil, but the evidence of Blain does make it clear, we think, that not until after the Beaumont wells had all practically ceased to flow did it ever fail or refuse to furnish oil as ordered. There was some delay about filling the order of July 11, 1902, owing to its having been misplaced, but the oil was finally shipped and accepted. To use the language of Mr. Blain, "the first order that they fell down on was the order of July 30 for 9 cars; they shipped 7 of those cars and failed to ship the other two; they had had 15 days in which to deliver the order." As the wells had then practically ceased to flow, the oil company by the very terms of the contract, as we construe it, was excused from furnishing any more oil, and because it undertook thereafter, when perchance it had a flowing well, to meet pending this litigation a possible liability, and then only refused to fill an order for oil far in excess of the needs of plaintiff in error, made, as before seen, on a construction that would be fatal to the contract itself, it did not lose the immunity the cessation of the oil wells had already given it, nor did it incur any new liability. The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.