TEXAS SEED & FLORAL CO. v. CHICAGO SET & SEED CO. (No. 984.)*

(Court of Civil Appeals of Texas. Amarillo. May 10, 1916. Rehearing Denied June 14, 1916.)

1. CONTRACTS ⚖➡10(4)—CONSTRUCTION—CONDITIONS—EFFECT.

A contract for the sale of onions to be grown "subject to crops" is not unilateral and will not excuse reasonable efforts on the part of the seller, since contracts should provide against hardships and performance will not be excused if the hardship is not anticipated, and the contract is not nonenforceable when the contingency provided against does not happen.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 37; Dec. Dig. ⚖➡10(4).]

2. CONTRACTS ⚖➡10(4)—CONSTRUCTION—CONDITIONS—EFFECT.

A contract for the sale of onions to be grown, providing that the seller should not be held to delivery if the onion sets grown to fill the order were damaged or destroyed from any cause not resulting from its negligence, was not a unilateral contract, but a promise for a promise, and requires no more than the law employs, since where a contract depends upon the continuance of a thing, a condition is implied that its destruction without negligence will excuse performance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 37; Dec. Dig. ⚖➡10(4).]

3. CONTRACTS ⚖➡134—CONSTRUCTION—UNILATERAL CONTRACTS.

If a contract for the sale of onions to be grown could be defeated by failure of crops or destruction while being held was unilateral, part performance by the buyer in growing a crop and holding it for shipment, being that upon which mutuality depends, relates back and makes the contract good from the beginning, since a contract does not lack mutuality because every obligation is not met by an equivalent counter obligation, because where the act of one depends upon the act of the other, an obligation to allow the thing necessary for the completion of the contract is necessarily implied.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 722; Dec. Dig. ⚖➡134.]

4. CORPORATIONS ⚖➡591 — CONSOLIDATION — EVIDENCE—SUFFICIENCY.

In an action on a contract for onions to be grown, brought against a corporation formed upon the consolidation of the corporation with which the contract was made with another, evidence *held* sufficient to justify a finding that the new corporation agreed to assume the indebtedness of its constituent companies.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2034, 2368–2372; Dec. Dig. ⚖➡ 591.]

5. CORPORATIONS ⚖➡590(1) — CONSOLIDATION —ASSUMPTION OF DEBTS—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1137, authorizing the consolidation of two or more corporations under a new corporate name, or the name of either, with the privileges, immunities, and rights of property of each, although the mere purchase by a corporation of the franchise of another does not constitute a consolidation, where two corporations consolidated and formed a new corporation, which took the name of one and assets of both, they did not defeat the obligations of the old companies, but both rights and liabilities are common; and, where the new corporation, although nothing was said at the time of consolidation, paid all but the contested debts of the old corporations, there was an implied promise to pay its obligations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2354, 2361; Dec. Dig. ⚖➡590(1).]

6. SALES ⚖➡339, 369 — ACTIONS FOR BREACH OF CONTRACT—DAMAGES.

Where a contract for the sale of onions to be grown before time for performance was repudiated by the buyer, since one party cannot himself, by renunciation, rescind a contract, the seller could accept the repudiation at the time and sue for damages, or elect to consider the contract as still in force, treat the onions as the property of the buyer, and sell them at the time set for performance, damages being the difference between the price brought and the contract price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 924, 926, 1083, 1084; Dec. Dig. ⚖➡ 339, 369.]

---

748        187 SOUTHWESTERN REPORTER        (Tex.

Error from District Court, Dallas County; J. C. Roberts, Judge.

Action by the Chicago Set & Seed Company against the Texas Seed & Floral Company and others. From a judgment for plaintiff and other defendants, the named defendant brings error. Affirmed.

John C. Robertson and Jas. P. Haven, both of Dallas, for plaintiff in error. Thompson, Knight, Baker & Harris, Short & Feild, Geo. S. Wright, and Alex S. Weisberg, all of Dallas, for defendant in error.

HUFF, C. J. The defendant in error, Chicago Set & Seed Company, brought this action against plaintiff in error, the Texas Seed & Floral Company, Robinson Seed & Plant Company, C. W. Robinson, W. M. Robinson, E. P. Brown, and A. J. Mayes, for damages upon the alleged breach of contract. The several parties answered, and the case was tried before the court without a jury, who rendered judgment in favor of the Chicago Set & Seed Company, against the defendant Texas Seed & Floral Company, for the sum of $2,025, and judgment in favor of the defendants Robinson Seed & Plant Company, C. W. Robinson, W. M. Robinson, E. P. Brown, and A. J. Mayes.

It will not be necessary to set out the pleadings and facts further than is stated by the trial court in the following findings of fact and conclusions of law:

First. On January 13, 1910, the defendant Robinson Seed & Plant Company made and executed at Dallas, Tex., a certain written contract and order for the purchase of 2,000 bushels of onion sets from the plaintiff, Chicago Set & Seed Company, which order and contract was as follows:

"A. L. Jones, Pres. & Treas. L. B. Jones, V. P. G. A. Bradt, Sec. Office of Chicago Set & Seed Company, Chicago, Ill. Contract for onion sets, between Chicago Set & Seed Company, of the city of Chicago, state of Illinois, party of the first part and Robinson Seed & Plant Co., city of Dallas, state of Texas, party of the second part: Said party of the first part agrees to grow and to hold for shipment to party of the second part the following amount of onion sets for delivery January, 1911, 2,000 bushels. ———— bu. dark red sets at $1.30 per 32 lb. bu. ———— bu. at $—— bu. —— bu. yellow sets at $1.20 per 32 lb. bu. —— bu. at $—— bu. —— bu. white sets at $1.60 per 32 lb. bu. —— at $—— bu. Party of the second part, as buyer agrees to take the sets ordered hereon at times specified, and to pay for them at the net cash prices annexed thereto, upon presentation of sight draft with railroad company's bill of lading showing the sets have been delivered for said buyer on board cars at Chicago, in good condition by said sellers. All orders are taken subject to approval of Chicago Set & Seed Co., at their home office in Chicago, and providing stock is unsold upon receipt of order. All orders taken previous to receipt of new crop are subject to crop. It is also understood that in case of damage or destruction of the onion sets held to fill this order, from any cause not resulting from the negligence of Chicago Set & Seed Company, that Chicago Set & Seed Company will not be held to deliver same, and shall not be held liable for the nondelivery of goods while they have any overdue account against the within party. Packages charged extra. Sec-

ondhand barrels, 20¢ each; one bushel crates, 11¢ each; two bushel sacks, 5¢ each. Sets to be screened through 1½-inch mesh sieve. Robinson Seed & Plant Co., per C. W. Robinson. Chicago Set & Seed Co., G. A. Bradt, Sec'y. January 13, 1910."

Second. On the 7th day of April, 1910, defendant Robinson Seed & Plant Company, by written communication to the plaintiff, specified the quantities of the different kinds of onion sets desired by defendant, stipulating 850 bushels yellow sets, 850 bushels red sets, and 300 bushels white sets.

Third. That on January 13, 1910, said order and contract was forwarded through the United States mail to the plaintiff, Chicago, Set & Seed Company, and in due course of mail same was received by plaintiff, Chicago Set & Seed Company, at its home office in Chicago, Ill., at a time when stock was unsold, and said order and contract was duly approved by plaintiff at its home office on or about the ———— day of January, 1910.

Fourth. That shortly after the approval of the said order and contract for the purchase of the onion sets above described, the plaintiff, pursuant to its duty, began growing and preparing the onion sets described in said order and contract, and thereafter, all said onion sets were grown, and practically all the same had been harvested on or before August 6, 1910.

Fifth. That on August 6, 1910, defendant Robinson Seed & Plant Company wrote a letter to the plaintiff, Chicago Set & Seed Company, as follows: "We are inclosing herewith our contract for onion sets, and beg to advise that our firm has gone out of business, and will kindly ask you to cancel your order." And in due course of mail, on August 10, 1910, said letter was received by plaintiff at Chicago, Ill.

Sixth. That at the time of the receipt of said letter by the plaintiff, the onion sets described in the order or contract had been sown, grown, and practically harvested, there being only a small portion of same unharvested, and it was necessary for the onion sets that had not been harvested to be harvested in order to prevent their being totally lost and in order that they might be properly preserved.

Seventh. That the plaintiff refused to accept a cancellation of the said contract by defendant Robinson Seed & Plant Company, and so advised said defendant, and after the receipt of the letter of date August 6, 1910, plaintiff completed the harvesting of the onion sets that had not been harvested at the time of the receipt of said letter, stored all the onion sets for the account of defendant Robinson Seed & Plant Company, and notified said defendant that it would hold defendant liable on its contract.

Eighth. That on October 10, 1910, defendant Robinson Seed & Plant Company again refused to perform its contract with plaintiff, and on January 24, 1911, the plaintiff wrote the defendant Texas Seed & Floral Company, advising that plaintiff would attempt to hold the Texas Seed & Floral Company upon the contract of purchase of onion sets made by the Robinson Seed & Plant Company, and also advising that the onion sets were at the time held for the account of the Texas Seed & Floral Company, and any expense incurred in reference to the onion sets after January, 1911, would be charged to the defendant Texas Seed & Floral Company. This letter was received by the Texas Seed & Floral Company, and on January 27, 1911, C. W. Robinson, who was at that time one of the officers of the Texas Seed & Floral Company, on behalf of the Robinson Seed & Plant Company, answered this letter, and instructed the plaintiff to dispose of the onion sets, and advising that if they were shipped it would be at the risk of the plaintiff.

Ninth. Meanwhile, continuously from and after the repudiation of said contract by the Robinson Seed & Plant Company, plaintiff diligent-

ly tried to dispose of said onion sets, but was unable to sell the red sets. Finally, upon about ────── it succeeded in selling the yellow and white sets for $665, which was the best price obtainable therefor, and which was the actual cash value of said onion sets at the time and place of said sale.

Tenth. That a reasonable charge for the storage of onion sets during the time they were held by the plaintiff subject to the order and for the account of the Robinson Seed & Plant Company, to wit, 5 cents per bushel per month, making a total of $85.

Eleventh. That plaintiff in all things complied with the terms and conditions of the contract aforesaid.

Twelfth. That the Robinson Seed & Plant Company was a corporation, organized under the laws of Texas, and doing business at Dallas, and its officers, directors, and stockholders were C. W. Robinson, W. M. Robinson, E. P. Brown, and A. J. Mayes.

Thirteenth. That the Texas Seed & Floral Company was a corporation organized under the laws of Texas, and doing business at Dallas, and at the time of the execution of the contract aforesaid all its capital stock was owned by R. Nicholson.

Fourteenth. That it was agreed between the stockholders, officers, and directors of the said two corporations, about June, 1910, that said two corporations should be consolidated, and the same was done in the following manner: A charter was obtained from the state of Texas, for a new corporation to be known as the Texas Seed & Floral Company, said new corporation being one of the defendants herein. All of the assets of each of said two constituent companies were by said companies transferred to the new corporation, with the purpose and intent of said constituent companies then and there ceasing to do business, and they did then and there cease to do business. It was agreed and understood that the stockholders in the constituent companies should receive for their respective interests in said companies stock in the new corporation, the amount of said new stock to be determined as soon as the net equity of the stockholders of the said two constituent companies could be ascertained definitely, by said net equity being meant the value of the assets liabilities of said respective constituent companies, and the amount of said net equities being unknown and unascertained at the time of said consolidation. That the open accounts belonging to each of said constituent companies were kept separate by the new corporation, and collections made upon same by the latter, and the proceeds of said collections applied from time to time to wipe out petty liabilities of said constituent companies, as far as the said proceeds would go. That all the other assets of the said two constituent companies, consisting principally of goods, wares, and merchandise, were transferred to the new corporation and commingled together, and were commingled with other goods, wares, and merchandise belonging to the new corporation, and the whole sold from time to time, and the proceeds used in the regular course of business of the new corporation.

Fifteenth. That the new corporation did not, at the time of the making of said agreement, assume in express words the payment of the debts of the constituent companies, but later the new corporation in fact paid said debts in the manner aforesaid, and all the debts of the constituent companies were in fact paid off by the new corporation, except one or two disputed debts and obligations, among which disputed debts and obligations is the one involved herein, and the new corporation finally assumed the debts of the said constituent companies.

Sixteenth. That the active officers and directors of the new corporation were C. W. Robinson, W. M. Robinson, E. P. Brown, and R. Nicholson, and all the matters and things aforesaid were done by the said persons.

Seventeenth. That the capital stock of the new corporation was $125,000, and all of the same was owned by the old stockholders of the said two constituent companies, except $5,000 thereof, subscribed by William Doran.

Eighteenth. That said stock remained unissued until long after the matters and things involved herein, because there was no agreement as to or ascertainment of the value of the net equities aforesaid.

Nineteenth. That the new corporation, the defendant Texas Seed & Floral Company, paid nothing to the Robinson Seed & Plant Company, or the old Texas Seed & Floral Company, for the assets of the said constituent companies, which were transferred to the new corporation, as aforesaid, and said assets were taken over by the new corporation, and appropriated to its own use and benefit. And in the process of consolidation the stockholders in the constituent companies were to be allotted stock in the new corporation, as above stated, in lieu and stead of their stockholdings in the constituent companies, and the business of each of the said constituent companies was, without interruption, merged into the new corporation, as aforesaid; and the managing officers and directors of the said two constituent companies became the managing officers and directors of the new corporation, and they negotiated and carried out the said consolidation, and did collect, sell, commingle, and appropriate the said assets, as aforesaid. That the assets commingled, as aforesaid, were so commingled as to render them indistinguishable and untraceable.

Twentieth. That at the time of said consolidation, the assets of the old Texas Seed & Floral Company were approximately ──────, and the liabilities approximately $──────, and that at said time the reasonable value of the assets of the old Robinson Seed & Plant Company were $35,000, and its liabilities were approximately $45,000, but all parties believed at the time of said consolidation that the assets of the old Robinson Seed & Plant Company would substantially exceed its liabilities.

### Conclusions of Law.

(1) I conclude that there was a valid and binding contract of purchase for said onion sets, and that the same was breached by the Robinson Seed & Plant Company without just cause, and the plaintiff thereupon became and still is entitled to the contract price of said onion sets, plus $85 storage, after deducting from said amount the sum received by it for the resale of the yellow and white sets.

(2) I further conclude that said obligation, amounting to $2,025.00, with interest from the ────── day of ────── until paid was a valid and binding obligation upon the Robinson Seed & Plant Company, and that by reason of the facts herein shown the new corporation, the Texas Seed & Floral Company, defendant herein, became and still is bound to pay same to the plaintiff."

The contract entered into was signed by the Robinson Seed & Plant Company, as will be perceived, and where we refer to plaintiff in error as having made the contract, it is intended to include the contract made by the Robinson Company.

[1-3] The first and second assignments of error and the propositions thereunder assert the judgment is erroneous for the reason that the contract sued on is unilateral, and lacks mutuality, and therefore unenforceable; that the Chicago Set & Seed Company was not liable under the terms of the contract for nondelivery. Defendant in error agreed to

grow and hold for shipment to plaintiff in error the amount of onions specified all orders taken previous to the new crop "are subject to crop." This order was taken before the new crop. The order given and accepted subject to the new crop did not relieve defendant in error from growing and holding for shipment the amount agreed upon and at the price stipulated. The defendant in error could not arbitrarily refuse to grow and ship the onions, but the agreement is that it would undertake to grow and ship. This would not, therefore, relieve it from its obligation to do so. If, after undertaking and using reasonable effort to grow, no crop was made, under the agreement perhaps defendant in error would be relieved. The contract implies that defendant in error will undertake to grow and use reasonable effort to do so. It is bound, on its part, to perform this part of the agreement, as much so as if it had been written into the contract in terms. Jones v. Gammel, 100 Tex. 320, 99 S. W. 701, 704, 8 L. R. A. (N. S.) 1197. If its efforts would not grow a crop, and some natural cause, over which it had no control, prevented a crop, this clause might relieve it. The other portion of the contract, that onion sets held to fill the order, if damaged or destroyed from any cause not resulting from the negligence of defendant in error, that it should not be held to deliver, did not give the defendant in error an arbitrary right to refuse to deliver or to damage or destroy the onions. If they were held for delivery, defendant in error, under the contract, was required to use reasonable care to preserve them from damage or destruction,· and if it did not, it was not excused from delivery. This does not render the contract unilateral. The agreement to perform on the part of defendant in error does not rest upon its will, wish or wants, but is a promise for a promise. A contract whose performance depends upon the continuance of a thing implies a condition that the destruction of the same without negligence shall excuse performance. The Tornado, 108 U. S. 342, 2 Sup. Ct. 746, 27 L. Ed. 747; Howeth v. Anderson, 25 Tex. 573, 78 Am. Dec. 538. The stipulation in the contract if damaged or destroyed by causes not resulting from negligence excuse delivery perhaps require no more than the law implied. The agreement to grow ·and deliver the onion sets from new crop, subject to crop, implies if there is no crop not resulting from fault on the part of the defendant in error, there can be no delivery. It is a well-recognized rule that contracts should provide against difficulties and hardships, and the hardship should be anticipated; if not, the party will not be excused from performance, but held to his contract. Where such contingencies are provided against in the contract, the contract by the provision is not thereby rendered nonenforceable, when the contingency did not happen. North Texas Construction Company v. San Jacinto Oil Co.;

95 S. W. 706. The performance in part related back to the promise and made a binding contract. The plaintiff in error agreed to take and pay for the onion sets; defendant in error agreed to grow, hold, and deliver them at the specified time and price. Even though the agreement could have been defeated by failure of crop or the destruction while being held, the performance on the part of defendant in error, in growing and gathering being that upon which the mutuality depends relates back and makes the contract good from the beginning if it was not so before. Taber v. Dallas County, 101 Tex. 241, 106 S. W. 332, on page 336; Pagé v. Payne, 41 Tex. 143, on page 146; Rose v. Railway, 31 Tex. 49.

This case is distinguishable from American, etc., v. Kennedy, 103 Va. 171, 48 S. E. 868, cited by plaintiff in error. If the onion sets were not damaged or destroyed, delivery under the contract could be enforced or damages recovered for failure to do so. The defendant in error was bound to use reasonable care not to damage or destroy. Damage or destruction was all that would excuse nondelivery after they were grown. Delivery did not depend upon the will or wish of the defendant in error, but it was bound to reasonable diligence to preserve, and keep them for that purpose. The plaintiff in error also cites Texas Produce Exchange v. Sorrell, 168 S. W. 74, which interpreted the contract then under consideration:

"That there is not a word in the contract which binds the Produce Company to handle the onions, but only limitation upon its liability in the event it should handle them, and giving it powers and privileges."

We do not interpret the contract in this case as not binding on the defendant in error. On the contrary, it was bound to grow, keep, and ship onions in the quantity and for the price designated. This liability could only be excused by failure of crop and destruction or damage not caused from the negligence of the defendant in error. We do not. interpret the contract in question as unilateral, but one upon consideration mutually binding. Generally, there is mutuality of obligation where both parties undertake to do something. A contract does not lack mutuality merely because every obligation of the one party is not met by an equivalent counter obligation of the other. So, where an act to be done by one party can be done only upon a corresponding act by the other, an obligation by the latter to do or allow the thing necessary for the completion of the contract is necessarily implied. R. C. L. Contracts, § 95, vol. 6; Jones v. Gammel, supra.

In this case the evidence and findings of the trial court show that the defendant in error performed part of its obligation before notice that the plaintiff in error would not take the onions. The order or contract was given and executed a year in advance.. The understanding, as evidenced by the contract of .the. parties, is that the defendant.

would have to grow the onions, gather them in season, and hold until the date of delivery. The evidence indicates that after the work of growing and gathering there is but little market for the product. Orders are taken in advance, so that the output is sold before grown. Defendant, relying upon this agreement, grew and gathered onions, and after this work had been done, and after it had complied with its obligation or the demands of the contract, plaintiff sought to renounce its obligation. We think the rule in unilateral obligations, where the party does the thing or performs in part, at least, the thing to be done, that the promise will relate back to the original contract will apply, and that plaintiff will be bound thereby, even if it should be determined that this is a unilateral contract. Assignments 1 and 2 are overruled.

The third, fourth, and fifth assignments present the propositions: (1) That there is no evidence supporting the fifteenth finding of fact by the trial court that the new corporation assumed the debts of its constituent companies; (2) the new corporation, in the absence of an agreement to assume the debts of the old, would not be liable therefor on account of having purchased the stock of the old; (3) the old company having been dissolved according to law, the officers thereof became trustees to liquidate the debts and dispose of its assets, in the absence of an appointment of a receiver.

If the finding of the trial court has support in the testimony that there was an agreement that the new corporation should assume and pay the indebtedness of its constituent corporations, then the above propositions must fail. The facts and the evidence in this case shows that the Robinson Seed & Plant Company and the old Texas Seed & Floral Company, by agreement of its officers and stockholders, consolidated and obtained a charter for the new corporation, retaining the corporate name Texas Seed & Floral Company, with all the assets of both companies which were placed into the new organization, and the debts and obligation of these old companies were paid therefrom. It is shown by the testimony that, some few months after the new corporation, it borrowed the sum of $75,000 for the purpose, among other things, of paying an indebtedness of the Robinson Seed & Plant Company to one of the banks, of $45,000, and, as expressed by Mr. Nicholson of the old Texas Company, to cover everything. Mr. Nicholson testifies that there was a written contract drawn at the time of consolidation, but this appears to have been lost or mislaid, and was not produced upon the trial. The witnesses, however, testified that there was nothing stated in that contract about the assumption of the debts, and Nicholson says that he could not say that the new company assumed the claim sued on, but further testified:

"Of course these things came up you know, after the consolidation was made and of course the new company I suppose would have to take that up."

And he also testified in one or two places that, while the contract of consolidation did not provide for assumption, they did later assume the debts; that the merchandise was thrown together, and instead of waiting to realize on the assets or merchandise, they decided to borrow money and take care of the debts.

W. M. Robins testified:

"The general outline of the deal of the consolidation was this: That each side was to throw its assets into the new corporation; that as soon as it could be definitely ascertained what the net equity of each side was, stock was to be issued in the new corporation to the respective sides representing their net equity. * * * All small accounts I presume have been paid. The Texas Seed & Floral Company paid them. There is another debt or two in question that have been paid. There is a dispute about them. All the debts except those in dispute have been paid by the Texas Seed & Floral Company."

The evidence shows that the stock was to be issued in accordance with the value of the equity of the respective parties in the two old companies, and that equity was to be determined and ascertained from the assets left after the payment of the indebtedness of the two companies, and in proportion thereto.

[4, 5] We believe the trial court's finding that there was an agreement to assume the indebtedness of the constituent companies of plaintiff is supported by the testimony. The authorities cited by appellant (Island City Savings Bank v. Sachtlebeen, 67 Tex. 420, 3 S. W. 733, and Cattlemen's Trust Co. v. Beck, 167 S. W. 753), if they can be construed to hold, as contended by plaintiff, that there must be an express assumption, would not therefore require a reversal in this case, for the reason that we believe the evidence supports the court's finding. In the first case cited, the Supreme Court says, in substance, that it was not doubted that when the bank was unable to pay its debt it might transfer its assets to a new organization without incurring liability for the debts of the insolvent concern, but such was not the fact in that case. There was, in fact, no new corporation, only a transfer by the stockholders of their interest. There was a mere change of membership, and not a change of the corporation itself. That case does not hold, and we do not think implies, that the liability of the new corporation must be established by an express agreement; the latter case cited by appellant for the statement that:

"The law seems to be that, in the absence of an agreement to this effect on the part of the new company, it is not bound for the obligation of the old."

The court, in that case, upon rehearing, stated, in effect, that their holding that there was no evidence of assumption, and that it

had not received any benefits or come into possession of any assets from the old company, was error; that the evidence in both these respects shows that there was an agreement and the taking of all the assets of the old company. The case quotes 10 Cyc. 287, which is to the effect that the new corporation will be liable for the obligation of the old:

"(1) Where the circumstances are such as to warrant the construction that the former is not a separate and distinct corporation, but merely a continuation of the latter, and hence the same in law; and (2) where it has, in express terms, or by reasonable implication, assumed debt of the old corporation, where this liability is imposed by the statute under which reorganization takes place, or where such liability is imposed upon it by decree of the court on foreclosure."

Article 1137, Vernon's Sayles' Civil Statutes, authorizes the consolidation of two or more corporations, under a new corporate name, or under the name of either, with all the privileges, immunities, and rights of property enjoyed by each at the date of the expiration of their charters. In this case the new corporation took the name of the old and the assets belonging to both. Certainly by this act they did not defeat the obligations of the old companies. We cannot conceive that it was ever the purpose of the Legislature to work such a result. The old companies having voluntarily assumed a new name, their rights are common, and their liabilities, it seems to us, should be. They could not be sued in the old name. Property in the new corporation belonging to the old cannot be divested out of the new in the name of the old. The mere purchase of franchise, etc., by one corporation, of that of another, does not constitute a consolidation, but this case presents a consolidation of two corporations, who are the constituents of the new, thereby vesting it with all the rights, property, and immunities of both. This should, it appears to us, be sufficient, with the other facts in this case, to show an implied promise to pay the obligations of the old, whose representative it is in name and in law. We believe the above proposition is supported by the well-considered case of Atlantic & Birmingham Ry. Co. v. Emma Johnson, 127 Ga. 392, 56 S. E. 482, 11 L. R. A. (N. S.) 1119. The opinion in that case was delivered by Lumpkins, J. We do not quote from the opinion, but believe that the reasons given there which render the new corporation liable for the obligations of the old are unanswerable. We quote the following from the notes under that case, at page 1120:

"Where the corporation incurring the liability ceases to have an independent existence de jure, the consolidated or absorbing corporation is liable at law as well as in equity, the ground of such liability being sometimes stated to be the continuance of the original corporation under a new guise (citing quite a number of cases). It is frequently said that the extent of such liability is to be measured by the assets received, but as such assets are usually, if not always, greater than the claim in litigation, this ques-

tion cannot be regarded as having been directly decided. Such limitation would seem inconsistent with the theory that the new or surviving corporation is to be regarded as the alter ego of the corporation, consolidated or merged, but is reconcilable with the implied assumption theory. Where, however, there is an absorption of the business and assets—in other words a merger de facto—by either a corporation formed for the purpose, or one already in business, the liability of the corporation receiving the assets is rested upon the familiar trust fund doctrine. Since such receiving corporation does not stand as a bona fide purchaser for value, in such case the extent of the liability is necessarily determined by the value of the property received."

The findings of the trial court in this case establish a consolidation under the statute. The new corporation, we believe, was liable at law for the obligation incurred by one of the old corporations which is a constituent of the new; at least upon the theory of an implied assumption. In the case of Railway Co. v. Shirley, 54 Tex. 126, it quotes with approval the following, at page 137:

"The consolidated corporation, for the purpose of answering for the liabilities of the old corporations, is deemed the same as each of its constituents, and may be sued under its new name for their debts as if no change had been made in the name or organization of the original corporation."

The Supreme Court therein says:

"Evidently such a consolidation cannot be accomplished in disregard of the rights of creditors or stockholders, and accordingly, either in the statute authorizing or in the agreement consummating such consolidation, stipulations are inserted for the protection of those rights. And even if neither statute nor agreement make mention of creditors, the consolidated corporation is held to have assumed the liabilities of its constituents."

The Court of Appeals follows the rule above announced in 1 White & Willson, §§ 384, 386; 3 Willson, § 97. It is stated in the last cases cited that it is settled in this state that the new corporation is held to have assumed the liability of its constituents upon voluntary consolidation. The evidence in this case, at most, shows that at the date of consolidation there was nothing said about assuming the obligation of the old company. However, it is ample to show that they afterwards did assume and pay them and agreed to do so and borrowed the money for that purpose; that they recognized at the time of the consolidation that, in order to ascertain the equity that each would have in the new company, or the stock to which they would be entitled, the debts must be deducted or paid from the assets of the old companies in determining their interests in the new.

[6] The sixth assignment asserts error on the part of the company as to the measure of the damages applied. At the time of the repudiation the contract was not wholly completed. The crop had been grown and nearly all gathered. Substantially all that was required to be done was the delivery. The defendant in error could have accepted the repudiation at the time and sued for the damages on the breach, or it could elect to

consider the contract as still in force. One party cannot by himself rescind a contract. The renunciation itself does not amount to a rescission. Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302; Kilgore v. North Texas, etc., 90 Tex. 139, 37 S. W. 598. We regard the contract in question more than a mere order for goods. However this may be, defendant had the right to treat the amount of onion sets ordered as property belonging to the plaintiff, and sell them on plaintiff's account and recover of it the sum representing the difference between the price brought and the contract price. Waples v. Overaker, 77 Tex. 7, 13 S. W. 527, 19 Am. St. Rep. 727; 2 Mech. on Sales, 1645 et seq. While defendant did not have a right, after the order was countermanded, to do anything which would enhance the damages, it was not bound to treat plaintiff's repudiation of it as ending the contract. It had the right, as it did, to treat the contract as still in force, and to have its damages determined with reference to the condition existing at the time fixed by the contract for performance. Palestine Ice, etc., v. Walter Connally & Co., 148 S. W. 1109, 1112; Mech. on Sales, §§ 1707, 1088, 1090; 3 Suth. on Damages, § 648.

We believe the trial court applied the proper measure of damages under the facts of this case and the findings of fact made by the trial court. The case will be affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes