

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

~~XXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

NO. 3043

Opinion holding that two or more private corpora-
tions, organized for purposes other than those
mentioned in Article 1315 of the Revised Civil
Statutes, 1925, are not authorized under Article
1316 of such statutes to consolidate their char-
ters.

OFFICE OF THE ATTORNEY GENERAL

March 27, 1939

Hon. Claude A. Williams          Opinion No. O-219
Assistant Secretary of State     Re:  Consolidation of
Austin, Texas                         corporations

Dear Sir:

        This department acknowledges receipt of your letter
of January 26, 1939, in which you ask the question:

        "May two or more private corporations organized
    for purposes other than those mentioned in Article
    1315 of the Revised Civil Statutes, 1925, consolidate
    their charters under a new corporate name in accord-
    ance with the provisions of Article 1316 of such stat-
    ute?"

        We also acknowledge receipt of a copy of the confer-
ence opinion of this department, dated November 4, 1938, being
No. 3026, written by Hon. Richard Brooks, Assistant Attorney
General, and a copy of the opinion of Hon. Edwin D. Guinn,
Attorney, Franchise Tax Division, in the office of the Secre-
tary of State, dated December 2, 1938. Copies of both of said
opinions are attached hereto. Said opinions, which relate to
the question submitted by you and which reach contrary conclu-
sions, have received the careful consideration of this depart-
ment.

After studying the opinions above referred to and all relevant authorities, it is our opinion that Article 1316 of the Revised Civil Statutes, 1925, does not authorize two or more corporations, organized for purposes other than those mentioned in Article 1315 of such statutes, to consolidate their charters. Having reached this conclusion, we must of necessity overrule the former opinion of this department, hereinabove referred to, which reached the opposite conclusion.

Articles 1315 and 1316, as they appear in the Revised Civil Statutes, 1925, read as follows:

"Art. 1315. Renewal of charter. - Corporations created for the support of benevolent, charitable, educational or missionary undertakings, the support of any literary or scientific undertaking, the maintenance of a library, or the promotion of painting, music or other fine arts, whose charter has expired by limitation, may revive such charter with all the privileges and immunities and rights of property, real and personal, exercised and held by it at the date of the expiration of its said charter, by filing, with the consent of a majority of its stockholders, a new charter under the provisions of this chapter, reciting therein such original privileges and immunities and rights of property, and by filing therewith a certified copy of such original expired charter."

"Art. 1316. Consolidation. - Any two or more of such corporations may revive and consolidate their charters under a new corporate name, or under the name of either, with all privileges, immunities and rights of property, real and personal, enjoyed by each at the date of expiration of their several charters, by, in like manner, filing a charter, which shall recite the facts of consolidation, accompanied by certified copies of said original charters; provided the provisions thereof shall not be construed to relieve any corporation from the payment of occupation taxes, now or hereafter required by law."

These articles were originally enacted as an amendment to Article 575, Chapter 3, Title 20, of the Revised Statutes of Texas of 1879, relating to the general powers of "every private corporation". By chapter XCV of the General Laws, Eighteenth Legislature, Regular Session, 1883, p. 98 (9 Gammel's Laws of Texas, page 404) a new section, to be numbered "Section 9" was added to Article 575 of the Revised Statutes, to read as follows:

"Section 9. Any private corporation created either by special act of the Legislature, or under the provisions of the general law, for the support of any benevolent, charitable, educational or missionary undertaking, the support of any literary or scientific undertaking, the maintenance of a library, or the promotion of painting, music or other fine arts, whose charter may expire or may have expired by limitation may revive such charter with all the privileges and immunities and rights of property, real and personal, exercised and held by it at the date of the expiration of its said charter, by filing, with the consent of a majority of its stockholders, a new charter under the provision of the general law of the State of Texas, reciting therein such original privileges and immunities and rights of property, and by filing therewith a certified copy of such original forfeited charter; and any two or more of such corporations may revive and consolidate their charters under a new corporate name or under the name of either, with all the privileges, immunities and rights of property, real and personal, enjoyed by each at the date of the expiration of their several charters, by, in like manner filing a charter, which shall recite the fact of consolidation, accompanied by certified copies of said original charters: provided this act shall not be construed to relieve any corporation from the payment of occupation taxes now or hereafter required by law."

It will be noted that the statute as originally enacted was all in one sentence, the portion of the statute which is now Article 1315 of the Revised Civil Statutes, 1925, being separated from the portion that is now Article 1316 of such statutes, by only a colon. It seems to be indisputable that although Section 9 was made a part of Art. 575, relating to all private corporations, still Section 9 was intended to apply only to certain named kinds of corporations, and that the phrase "such corporations" as used in the latter part of the act referred to corporations mentioned in the first part of the act, namely, corporations created "for the support of any benevolent, charitable, educational or missionary undertaking, the support of any literary or scientific undertaking, the maintenance of a library, or the promotion of painting, music, or other fine arts."

It is a general rule of statutory construction that a statute, in the absence of some specific amendment, should be given "the meaning which it had at the time of its enactment".

Manry v. Robison, 122 Tex. 213, 56 SW (2d) 438 (1932).  Unless, therefore, there is some compelling reason for the adoption of a different construction, we believe that the phrase "such corporations" should now be given the same meaning as it had in the statute as it was originally enacted.

Article 575 of the Revised Statutes of 1879 was re-enacted in Article 651 of the Revised Statutes of 1895, there being no change in the provisions of Section 9 thereof, except that the two portions thereof were separated by a semi-colon instead of a colon.

Article 651 of the Revised Statutes of 1895 was amended by Senate Bill No. 221, Chapter CLVIII, General Laws, 30th Legislature, Regular Session, 1907, page 301, and by House Bill No. 586, Chapter 115, General Laws, 31st Legislature, Regular Session, 1909, page 225, but neither of these laws changed the provisions of Section 9 of this article.

Article 651 of the Revised Statutes of 1895 was split into three different articles by the Legislature in enacting the Revised Civil Statutes of 1911.  The first eight sections of Article 651, of the Revised Statutes of 1895 were re-enacted as Article 1140, a part of chapter 3 of Title 25 of the Revised Civil Statutes of 1911.  Section 9 of Article 651 of the Revised Statutes of 1895 was re-enacted in two separate parts as Articles 1136 and 1137 of Chapter 2 of Title 25, Revised Civil Statutes of 1911.  These two articles of the Revised Civil Statutes of 1911 read as follows:

"Art. 1136.  Renewal of charter of certain benevolent, etc., corporations, how. - Any private corporation created either by special act of the legislature or under the provisions of the general law for the support of any benevolent, charitable, educational or missionary undertaking, the support of any literary or scientific undertaking, the maintenance of a library, or the promotion of painting, music or other fine arts, whose charter may expire or may have expired by limitation, may revive such charter, with all the privileges and immunities and rights of property, real and personal, exercised and held by it at the date of the expiration of its said charter, by filing, with the consent of a majority of its stockholders, a new charter under the provisions of the general law of the state of Texas, reciting therein such original privileges and immunities and rights of property, and by filing therewith a certified copy of such original expired charter."

"Art. 1137.  Renewal and consolidation of two or
more such corporations, etc., how. - Any two or more of
such corporations may revive and consolidate their char-
ters under a new corporate name, or under the name of
either, with all privileges, immunities and rights of
property, real and personal, enjoyed by each at the date
of the expiration of their several charters, by, in like
manner, filing a charter, which shall recite the fact of
consolidation, accompanied by certified copies of said
original charters; provided, the provision thereof shall
not be construed to relieve any corporation from the pay-
ment of occupation taxes, now or hereafter required by
law."

The fact that the two provisions of the statute, which
had formerly been one sentence in a single section of the stat-
utes, were divided so as to form two separate articles does not
indicate that the statutory provisions should receive a differ-
ent interpretation from the meaning which they originally had,
where there was no substantial change in their phraseology. Buck
Stove & Range Co. v. Vickers, 226 U.S. 205, 57 L.Ed. 189, 335 S.
Ct. 41 (1912).

In the opinion of this department, dated November 4,
1938, the case of Texas Seed & Floral Company v. Chicago Set &
Seed Company, 187 S.W. 747 (Civ.App., Amarillo, 1916) in which
writ of error was refused, is cited as authority for the propo-
sition that  Article 1137, Revised Civil Statutes of 1911 (now
Article 1316, Revised Civil Statute, 1925) has been judicially
construed to authorize commercial corporations to consolidate
their charters.  It is true that in the opinion in this case
the court said that Article 1137 authorized the consolidation
of corporations, and that under the findings of the trial court,
a consolidation had been established under the statute.  It does
not appear, however, that the point was raised that Article 1137
applied only to the corporations formed for the purposes men-
tioned in Article 1136, and this point is not mentioned in the
court's opinion.  Furthermore, the validity of the consolidation
was entirely immaterial to the decision of the only question be-
fore the court; viz., the liability of the new company to a cred-
itor of one of the old companies.  Even if the consolidation was
without lawful authority, still the new corporation was liable
to the creditors of the old corporations.  This point was ex-
pressly passed on by the Commission of Appeals in the case of
Gueringer v. St. Louis, B. & M. Ry. Co., 23 S.W. (2d) 704 (1930)
in an opinion by Presiding Judge Harvey, which was approved by
the Supreme Court.  In this opinion Judge Harvey said:

"The fact that none of the corporations involved
in the transaction are shown to have had legal author-
ity to effect a consolidation or merger is unimportant.
For, if a consolidation or merger was agreed upon and
actually put into operation, the lack of legislative
authority in that respect cannot be set up by the de-
fendant company as a defense against liability to the
creditors of the corporations."

Furthermore it should be pointed out that the decision
of the Court of Civil Appeals in Texas Seed & Floral Co. v. Chi-
cago Set & Seed Company, supra, is a decision by an intermediate
court and not by the court of last resort. Under the statutes
then in effect the refusal of a writ of error by the Supreme
Court merely indicated that the court was of the opinion that a
correct judgment had been entered, and did not indicate that the
Supreme Court concurred in all that was said in the opinion.
Pickrell v. Butler, 116 Tex. 567, 296 S.W. 1062 (1927); Davis v.
Lanier, 94 Tex. 455, 61 S.W. 385 (1901); Aspley v. Hawkins, 99
Tex. 380, 89 S.W. 972 (1905).

For the reasons stated, we do not believe that the
opinion in the case of Texas Seed & Floral Company v. Chicago Set
& Seed Company, supra, can be considered as a judicial construc-
tion that Article 1137 applies to commercial corporations as well
as corporations formed for the purposes mentioned in Article
1136. There being no judicial construction of the statute on
this point, there is no reason for applying the well recognized
rule, sustained by cases cited in the former opinion of this de-
partment, that the re-enactment of a statute is deemed an adop-
tion of the judicial construction thereof.

Articles 1136 and 1137 of the Revised Civil Statutes
of 1911 were substantially re-enacted as A rticles 1315 and 1316
of the Revised Civil Statutes, 1925, which have been quoted above.
Since said date, however, two new articles have been added to the
statutes, which new articles have been inserted by the legisla-
ture between Articles 1315 and 1316. The first of these new arti-
cles was added by House Bill No. 122, Chapter 179, Acts, 45th
Legislature, Regular Session 1937, page 368, which reads as fol-
lows:

"Section 1. That Article 1315 of the Revised Civil
Statutes of Texas, of 1925, be and the same hereby is
amended by adding thereto Article 1315 (a) to read as
follows:

"'Article 1315 (a). Subject to a finding by the
Secretary of State as hereinafter provided, any private

corporation organized or incorporated for any purpose
or purposes authorized under this Title, at any time
within ten (10) years prior to the expiration of its
charter, or any extension thereof, may extend such char-
ter and the corporate existence of such corporation for
an additional period of not to exceed fifty (50) years
from the expiration date of the original charter, or any
extension thereof, with all the privileges, powers, im-
munities, right of succession by its corporate name,
and rights of property, real and personal, exercised
and held by it at such expiration date, to the same in-
tents and purposes as upon original incorporation.  The
manner of extending any such charter shall be by a reso-
lution in writing, adopted at any annual or special
meeting of stockholders called for that purpose by stock-
holders holding a majority of the shares of capital stock
of such corporation then outstanding, such resolution to
specify the period of time for which the charter is ex-
tended, and a copy of such resolution, duly certified by
the secretary of the corporation, under the corporate
seal, shall be filed and recorded in the office of the
Secretary of State.   Upon the adoption of such resolu-
tion and the filing of a certified copy thereof with the
Secretary of State, together with payment of the filing
fee herein prescribed, the charter and corporate exist-
ence of such corporation may be extended for the addi-
tional period of time recited in such resolution.  The
filing fee to be paid for any such extension of a char-
ter shall be such fee as said corporation would be re-
quired under the Statutes of Texas to pay in the event
it was then applying for a new charter instead of ex-
tending its then existing charter.

"'Such extensions, however, may be made only in in-
stances where the Secretary of State shall have found,
after proper investigation, that such corporation is
solvent and its capital unimpaired.'

"Sec. 2.  The fact that there is now no General Law
providing for the extension of corporate charters, and
the fact that securities of Texas corporations are being
discriminated against because investors have questioned
the validity of any such securities where the maturity
date thereof was subsequent to the expiration date of the
charter of the corporation issuing such securities, and
the fact that this operates as a handicap to the fair
and proper financing of Texas corporations create an emer-
gency and an imperative public necessity that the Consti-
tutional Rule, requiring bills to be read on three several
days, be suspended, and that said Rule is hereby suspended,

and that this Act take effect and be in force from and after its passage, and it is so enacted."

Article 1315 (b) was added by Senate Bill No. 21, Chapter 14, Acts, 45th Legislature, 1st Called Session, 1937, page 1773, which reads as follows:

"Section 1. That Article 1315 (a) of the Civil Statutes of Texas be and the same is hereby amended by adding thereto Article 1315 (b) to read as follows:

"'Article 1315 (b); The provisions of Article 1315(a) shall extend to and include all private corporations incorporated under the general laws of Texas. The period of ten (10) years prior to the expiration of the charter or any extension thereof referred to in Article 1315(a) shall include the period of time during which such corporation may have continued its existence under the provisions of Article 1389 of the Revised Civil Statutes of 1925.'

"Sec. 2. The fact that it is not clear whether the provisions of Article 1315 (a) of the Civil Statutes of Texas passed in 1937 include all private corporations incorporated under the general laws of Texas, or whether the period of ten (10) years prior to the expiration of the charter or any extension thereof referred to in Article 1315 (a) includes the period of time during which such corporation may have continued its existence under the provisions of Article 1389 of the Revised Civil Statutes of Texas, and the fact that securities of Texas corporations are being discriminated against because investors have questioned the validity of any such securities where the maturity date thereof was subsequent to the expiration date of the charter of the corporation issuing such securities, and the fact that this operates as a handicap to the fair and proper financing of Texas corporations create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days, be suspended, and that said Rule be suspended and that this Act take effect and be in force from and after its passage and it is so enacted."

It will be noted that Article 1315 is not supplanted by Articles 1315 (a) and 1315 (b), but that Articles 1315 (a) and 1315 (b) are merely added to the statutes and inserted between Articles 1315 and 1316. The question is presented, therefore, whether this addition and insertion constitutes an implied amendment of Article 1316, in the absence of any express reference to Article 1316 in the amending Acts. This is an entirely different question from the question decided by the Austin Court of Civil

Appeals in the case of <u>International & Great Northern Railway Company v. Bland</u>, 181 S.W. 504. The statute involved in the <u>Bland</u> case, <u>supra</u>, amended Articles 1970, 1971, 1973 and 1974 of Chapter 13, Title 37, and Article 2061 of Chapter 19, Title 37, of the Revised Civil Statutes of 1911, by setting forth the form in which said articles should read thereafter. Article 2061, as amended, contained the phrase, "as provided for in the foregoing articles". The question before the court was whether this phrase should be construed as referring to Articles 1970, 1971, 1973 and 1974, contained in the amending act, and preceding Article 2061 in that Act, or to Articles 2058, 2059 and 2060, which were contained in the same chapter of the Revised Civil Statutes with Article 2061. The court held that Article 2061, as amended, should be considered as placed in the Revised Civil Statutes in its proper place, and, that the phrase, "as provided for in the foregoing articles" should be construed as referring to Articles 2058, 2059 and 2060, which numerically immediately preceded Article 2061 in the Revised Civil Statutes, and not as referring to the other Articles set forth in the same amending statute. In reaching this conclusion, the court was guided by what it considered to be the intention of the Legislature.

We find nothing in the Acts passed in 1937, and mentioned above, which indicate any intention of the Legislature to change the meaning of Article 1316. Articles 1315 (a) and 1315 (b) apparently were inserted by the Legislature between Article 1315 and Article 1316 solely for the purposes of convenience in arrangement. Articles 1315 (a) and 1315 (b) relate to the extension of the corporate existence of certain corporations prior to the expiration date of the original charter, or any extension thereof. The Secretary of State is authorized to grant extensions only if he finds, after proper investigation, that the corporation is solvent and its capital unimpaired. This requirement indicates an intention to extend the corporate life of corporations only where certain conditions are met. However, if Articles 1315 (a) and 1315 (b) were construed to amend Article 1316 by implication so as to allow commercial corporations to "revive and consolidate their charters", then commercial corporations could revive and consolidate their charters without making any proof of solvency or the soundness of their capital, because no such proof is required by Article 1316. We do not think it is reasonable to say that the Legislature intended to require careful supervision of the extension of the corporate lives of single corporations, but that by the same act it intended by implication to change the law so as to allow revival and consolidation of expired commercial corporations practically without condition or regulation.

It is well settled that express statutory authority is required to permit corporations to consolidate their charters,

and that consent of the state to consolidation will not be implied.  See G. C. & S. F. Ry. Co. v. Newell, 73 Tex. 334, 11 S.W. 342; 8 Thompson on Corporations, Section 6020.  There are sound reasons for allowing the revival and consolidation of the charters of corporations formed for benevolent and charitable purposes, even without strict supervision, which would not apply to the revival and consolidation of commercial corporations.  Aside from questions relating to the protection of the creditors and stockholders of such corporations, the state has declared its policy against consolidations for various purposes, prohibited by the laws relating to trusts and monopolies.  See Title 126 of the Revised Civil Statutes, 1925, and particularly Articles 7426 and 7427.

Furthermore if Article 1316 were construed to apply to commercial corporations a serious question would be raised as to the right of corporations to consolidate which were formed with different purpose clauses, since Article 1316 expressly provides that the consolidating corporations shall have "all privileges, immunities and rights of property, real and personal, enjoyed by each at the date of the expiration of their several charters".

The Legislature has passed a number of statutes allowing consolidation of particular kinds of companies.  See the following Articles of the Revised Civil Statutes, 1925, relating to consolidation of certain kinds of corporations:  building and loan associations, Articles 871, 881 a-54 (passed in 1935); fraternal benefit societies, Article 4840; telegraph and telephone companies, Articles 1420, 1421, 1424 and 1425; and electric cooperative corporations, Article 1528 b, section 27 (passed in 1937).  We do not believe that the Legislature would have passed these acts allowing consolidations of particular kinds of corporations if it had intended by Article 1316 to confer blanket authority on all corporations to consolidate their charters.

For the reasons above stated, it is our opinion that Article 1316 of the Revised Civil Statutes, 1925, does not authorize two or more private corporations, organized for purposes other than those mentioned in Article 1315 of such statutes, to consolidate their charters, and you are so advised.

Yours very truly
ATTORNEY GENERAL OF TEXAS
By /s/ James P. Hart
James P. Hart, Assistant

JPH:MK:wb

This opinion has been considered in conference, approved, and ordered recorded.

/s/ W. F. Moore
W. F. Moore
FIRST ASSISTANT ATTORNEY GENERAL