Joseph Sonka v. R. K. Chatham & Co.

No. 75.

**1. Revocation of Order for Machinery—Measure of Damages.—** Appellant ordered machinery in February, to be delivered on April 1. March 15 the order was revoked by wire, but meantime orders for the greater part of the machinery ordered in February had been placed by appellee with manufacturers. About April 1 the machinery was shipped by appellee. and appellant refusing to receive it upon its arrival, appellee caused it to be sold, and sued for the difference between the contract price and the sum received for the machinery when sold. *Held:*

1. The rules of law defining the rights of a seller against the purchaser, when the latter first breaks the contract by refusing to take the goods when tendered,. do not apply.

2. Appellee should not have shipped the goods to Seguin, and thereby subjected appellant to increased damages, but should have stopped performance as far as they reasonably could do so, and then have held him liable for resulting damage to them.

3. Appellees will be entitled to have the contract price taken as the standard by which to determine their loss, from which should be deducted the market value of such goods as they had in stock, and the cost of shipping them to Seguin; such further sums as the machinery purchased by appellees cost them, unless they could not dispose of it for as much as they paid for it, in which event the amount they could have reasonably realized from it had they not shipped it to Seguin, and also the cost of shipping to Seguin; and the balance will be the measure of their recovery.

**2. Repudiation of Contract—Effect.—**The effect of the repudiation of his contract by appellant was to impose upon appellees the duty to reasonably conduct their affairs so as to lessen the damages, and appellant will be relieved from liability only to the extent that damages could thus have been avoided.

Appeal from Brazos. Tried below before Hon. John N. Henderson.

*Ireland, Burges & Dibrell*, for appellant.—1. In an executory contract of sale, if the same be repudiated before delivery and acceptance, no title passes to the property, and the vendor can not maintain an action for the price or value of 'the property, but must sue for damages for breach of contract. A party has the power to stop the performance on the other side by an explicit order to that effect, by subjecting himself to such damages as will compensate the other party for being stopped at.

that point or stage in the execution of the contract. Benj. on Sales, 237, 238, 279, 283; Story on Sales, 315, 231–233; Bank v. Tufts, 63 Texas, 113; Gammage v. Alexander, 14 Texas, 419; Tufts v. Lawrence & Co., 77 Texas, 526; 2 Suth. on Dam., 362, 160.

2. When the appellees received the notice that the appellant had repudiated the executory contract of sale, and that he did not intend to accept the goods ordered, it was their duty to have stopped further performance of the contract and sued appellant for damages; and the measure of damages would have been the difference between the contract price and the value of the goods in the condition in which they were when such notice was received, or the difference between the contract price of the goods and their value at the time such notice was received. Benj. on Sales, 558, 559; Story on Sales, 438; 5 Wait's Act. and Def., 608, art. 3; 2 Suth. on Dam., 359–362, 353; Tufts v. Lawrence & Co., 77 Texas, 526.

*Ford & Doremus*, for appellees.—1. The remedy of Chatham & Co., the vendors, upon the refusal of Sonka, the vendee, to receive the goods purchased, was not limited, as claimed by appellant, to the right " to sue for damages for breach of contract;" but they had other and additional remedies, one of which was to sell the goods so purchased, and apply the proceeds of the sale to the payment pro tanto of the debt, and to sue for the difference between the amount the goods brought at such sale and the price the vendee agreed to pay. Welden v. Meat Co., 65 Texas, 487; Field on Dam., secs. 298, 299; Tied. on Sales, secs. 333, 334; 3 Pars. on Con., 208, 210; Sedg. on Dam., 282; 2 Benj. on Sales, sec. 1165; 5 Wait's Act. and Def., 580, sec. 34; Dustan v. McAndrew, 44 N. Y., 72.

2. If appellant repudiated the contract, but at a time and under circumstances that appellees could not stop its performance, then the remedy of appellees was that adopted by them.

3. If it be held that the repudiation was made under such circumstances as to compel appellees to stop performance, then appellees are entitled to such damages as will compensate them for being stopped at that point or stage in the execution of the contract. White v. Land and Cattle Co., 75 Texas, 465; Duncan v. McMahan, 18 Texas, 597; Masterton v. The Mayor, 7 Hill, 61; Madden v. Lemke, 48 N. W. Rep., 785; Field on Dam., sec. 255; 2 Suth. on Dam., 362.

WILLIAMS, Associate Justice.—On the 24th day of February, 1890, appellant, who resided at Seguin, entered into a written contract with appellees, whose place of business was Bryan, by which he agreed to buy from them certain machinery, to be delivered on or about the 1st day of April, 1890, free on board cars at Seguin. The price agreed on was $3300, which appellant agreed to pay in two installments, on May 15 and December 1, 1890. It was stipulated that the title to the property should

remain in appellees until the purchase money was paid, and that in default of payment, appellees should have the right to take the property and sell it for payment of the purchase money, expenses, etc.

Appellant discovered that he had made a mistake as to the character of machine needed by him, and on February 26, 1890, telegraphed appellees. "Hold order until I write; a change is desired." On March 5, 1890, he wrote to appellees, indicating the desired change; and the latter replied on March 7, stating that the machinery had been ordered for appellant, but that the proposed changes would not affect them in any great degree, and requesting appellant to meet their agent, A. M. Rhodes, at San Antonio, on the next Monday night, when they were satisfied satisfactory arrangements could be made. Appellant did not go to San Antonio, but on March 11, Rhodes met him in Seguin, and an interview took place, about which there is a conflict of evidence, appellant claiming that the original contract was abandoned by agreement, and a new one substituted, and Rhodes testifying that no new agreement was reached, and that the order stood as first made.

March 14, appellees wrote appellant, suggesting that part of the machinery specified in the order, and which appellees would have to purchase from other manufacturers, be changed, and articles of the same character manufactured by them be substituted, adding, "Your complete outfit with this exception has been ordered long since and will be shipped promptly."

March 15, 1890, appellant wired appellees, "Do not order any machinery for me now; I cancelled first order with consent of Rhodes." Appellees replied by letter of date March 17, 1890, stating that they had received no second order, and had not allowed appellant to cancel the first, and that they had long since ordered the goods, and would have them shipped promptly, etc.

Appellees caused the machinery to be shipped to appellant at Seguin, free on board the cars, most of it arriving by the 10th of April, 1890. The appellant refused to accept the machinery; and appellees, through their agent at Seguin, sold it, according to the terms of the original order, treating the property as that of appellant. The machinery was bought in by appellees for the sum of $1000, which was credited on the original order.

This is an action by appellees, against appellant, to recover a judgment for the value of the machinery, less $1000, the amount for which it sold at public auction, after deducting attorney fees and costs of sale.

The appellant answered by admitting the original order to have been given, but set up that said order had been cancelled and an amended order given; and that the original order was repudiated on the 15th day of March, 1890, long before said machinery had been shipped him, and before some of it had been manufactured by the appellees or by their or-

der; and that if appellees had any cause of action against him, it was a suit for damages on an alleged violation of contract, and not a suit for debt.   The case was tried by the court without a jury, and the appellees recovered judgment against the appellant for the sum of $2815 and interest at the rate of 12 per cent per annum; from which judgment the appellant appeals.

It was shown during the trial, that appellees had some of the articles in stock at Bryan, but that the larger part of it was purchased from other manufacturers at various places, and that the orders for it had been forwarded long before the receipt by appellees of appellant's message of March 15.

There was no evidence, however, that the shipment of any of it had been commenced before that time, the bills of lading being all dated about the 1st of April.

The telegram of March 15 was a distinct repudiation of the contract by appellant.   The rules of law defining the rights of a seller against the purchaser, when the latter first breaks the contract by refusing to take goods when tendered at the time and place of delivery, do not apply. Tufts v. Lawrence, 77 Texas, 526; Gammage v. Alexander, 14 Texas, 419; 2 Suth. on Dam., 361.

According to the rules laid down in these authorities, appellees should not have shipped the goods to Seguin, and thereby subjected appellant to increased damages, but should have stopped performance as far as they could reasonably do so, and then have held him liable for such damages as resulted to them.

In Tufts v. Lawrence, 77 Texas, 526, a case similar to this, the measure of damages is said to be the " difference between the contract price and the value of the goods in the condition they were in when he received the notice [of repudiation] at the place of their manufacture.''   There it appeared that the property was to be delivered to the purchaser at the place of manufacture.   Here the machinery was to be delivered at Seguin, and appellees would have had to incur the cost of shipment to that point before their right to the contract price could have arisen.   The measure prescribed in the case referred to would therefore, if applied to this case, include a profit which appellees would not have realized had the contract been carried out.   On the other hand, appellees may have become bound to other parties to pay for the larger part of the machinery before receiving notice of the repudiation of the contract.   They could not be required to violate their contracts with others, but had the right to complete them and pay for the goods purchased.

They might thus have been left with a large lot of machinery on hand, at different places, selected to fill this particular order, which they could not have disposed of without loss to themselves.   This they should not be required to bear.   The only effect of the repudiation by appellant of

the contract was to impose upon them "the duty to reasonably conduct their affairs so as to lessen the damages." And appellant will be relieved from liability only to the extent that damages could thus have been avoided. 2 Suth., 361.

The measure of damages must, we think, depend on the facts which may be shown on another trial. In any event, appellees will be entitled to have the contract price taken as the standard by which to determine their loss. From this should be deducted the market value at Bryan of such of the goods as appellees had in stock there, and the cost of shipping them to Seguin.

There should be deducted such further sums as the machinery purchased by appellees cost them, unless it should appear that they could not have disposed of it for as much as they paid for it, in which event the amount they could reasonably have realized from it, had they not shipped it to Seguin, should be deducted; also the cost of shipping it to Seguin. The difference between the amount thus to be deducted and the contract price is what appellees will be entitled to recover.

What we have said is, of course, upon the assumption that there was not a rescission of the contract by consent, and that the rights of the parties are made to depend upon the repudiation of it by appellant, by his telegram of March 15, 1890.

The facts were not developed in the court below with reference to the measure of damages, as we define it, and we can not render a judgment which would probably reach the justice of the case, and it will therefore be reversed and remanded.

*Reversed and remanded.*

Delivered February 23, 1893.