PALESTINE ICE, FUEL & GIN CO. v. WALTER CONNALLY & CO.

(Court of Civil Appeals of Texas. Texarkana. May 23, 1912. Rehearing Denied June 20, 1912.)

1. SALES (§ 377*)—BREACH OF CONTRACT—PETITION—DAMAGES.

A petition, in an action for a buyer's failure to receive and pay for machinery ordered of the seller, which alleges that the machinery ordered was special and had to be manufactured, and that the buyer refused to receive and pay for the machinery, does not seek a recovery of special damages, but only such as ordinarily result from the refusal of a buyer to receive and pay for goods he contracted to buy.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092; Dec. Dig. § 377.*]

2. DAMAGES (§ 76*)—LIQUIDATED DAMAGES—PENALTIES—CONSTRUCTION OF CONTRACT.

The court in determining whether the sum named in a contract to be paid in case of a breach thereof is to be treated as liquidated damages or as a penalty may consider the nature of the contract, the terms thereof, the consequences naturally arising from a breach, and the peculiar circumstances of the transaction.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 154, 155; Dec. Dig. § 76.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**3. DAMAGES (§ 78*)—LIQUIDATED DAMAGES—PENALTIES—CONSTRUCTION OF CONTRACT.**

A contract for the purchase of machinery consisting of numerous parts to be manufactured pursuant to the order of the buyer, which stipulates that, in the event of the buyer's failure to receive the "machinery or any part thereof," he agrees to pay a specified per cent. of the amount of the contract and a specified per cent. as attorney's fees if placed in the hands of an attorney for collection as liquidated damages, and not as a penalty, does not provide compensation to the seller for a breach by the buyer, but provides for a penalty, and the seller may only recover the actual damages sustained, but the amount of the recovery is not limited by the penal sum.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

**4. SALES (§ 201*) — CONTRACTS — PASSING OF TITLE.**

Where a buyer ordered machinery constituting a special outfit and not customarily carried in stock, and the seller ordered the machinery of a third person, and thereafter the buyer notified the seller not to ship the machinery, unless he was willing to allow a rebate on the contract price, and the machinery was subsequently shipped to the buyer, who refused to receive and pay for it, and the seller afterwards advertised the machinery for sale and sold it, the ownership of the machinery never passed to the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 529–541; Dec. Dig. § 201.*]

**5. SALES (§ 369*)—CONTRACTS—BREACH—REMEDY OF SELLER.**

Where a buyer of machinery countermanded his order, he exercised a right, subject to pay to the seller the damages sustained thereby, and the seller on receiving a letter countermanding the order could treat the buyer's repudiation of the contract as a breach and sue for the damages, or he could treat the contract as still in force and recover damages sustained with reference to conditions existing at the time fixed in the contract for performance.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1083, 1084; Dec. Dig. § 369.*]

**6. SALES (§ 384*) — BREACH OF CONTRACT — MEASURE OF DAMAGES.**

Where a buyer of machinery to be manufactured countermanded his order after the machinery had been manufactured and was ready for shipment, refusing to receive and pay for it, the seller, treating the machinery as belonging to the buyer, could sell it on the buyer's account, and recover as damages the differences between the price it brought at the sale and the contract price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

**7. SALES (§ 384*) — BREACH OF CONTRACT — MEASURE OF DAMAGES.**

Where a seller treated the contract of sale as in force notwithstanding the buyer's countermanding his order, the measure of the seller's damages was the difference between the value of the goods at the time fixed by the contract for performance and the contract price, less any enhancement of that difference, due to the unauthorized conduct on the part of the buyer after the order was countermanded, and, to determine the difference, the seller could sell the goods and ascertain their value, and the buyer could not complain of the place of the sale, in the absence of any evidence that he was prejudiced in consequence thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by Walter Connally & Co. against the Palestine Ice, Fuel & Gin Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Morris & Fowler and W. I. Sims, all of Palestine, for appellant. Lasseter & McIlwaine, of Tyler, for appellees.

WILLSON, C. J. The appeal is from a judgment in favor of appellees against appellant for the sum of $1,102 as the damages suffered by the former because of a breach by the latter of its undertaking to receive and pay for certain machinery it had agreed to buy of appellees.

The contract breached by appellant was in writing, and in the form of an order for the machinery. So far as material to questions made, the order was as follows:

"Name of purchaser, Palestine Ice, Fuel & Gin Company. Factory order No. ———. Entered Order Book, page ———. Acknowledged to salesman, ———. Acknowledged to purchaser 2/4/. Entd. 197. Salesman, F. James. Date, 2/1/1911. Order for machinery.

"The undersigned hereby purchase from Walter Connally & Co., Inc., Tyler, Texas:

"4 70-saw Pratt huller gin with Brown drive;

"4 70-saw Class C feeders with tilting board;

"1 280-saw battery condenser;

"2 Iron dust flues;

"1 280-saw steel lint flue;

"1 double box hydraulic (belt driven pump) press with friction tramper, with all fittings (750 pound bale);

"1 12" Class D galvanized steel elevator complete (8");

"1 13" seed-blowing elevator complete (8");

"4 34x8 pulleys for gins;

"1 38x10 pulleys fan C shaft;

"1 8x4 pulleys seed conveyor;

"1 8x4 pulleys seed feeder;

"1 6x3 pulleys condenser;

"1 5x2 pulleys A. C. O. valve;

"1 5x2 pulleys feed conveyor;

"With all leather belting according to plan of Continental Gin Company, to be shipped to Palestine on or before the 1st day of June, or as soon thereafter as practicable, which we agree to receive on arrival and pay freight charges on same and in addition thereto, to pay to Walter Connally & Co., Inc., at Tyler, Texas, $2,400.00 cash on delivery. $2,400.00 Total. F. o. b. Palestine.

"In case we fail or refuse to receive said machinery, or any part thereof, before or after shipment, or on arrival, we agree to pay Walter Connally & Co., at Tyler, Texas, twenty-five per cent. of the amount of this contract, and ten per cent. thereon as at-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

torney's fees, if placed in the hands of an attorney for collection, as stipulated, as liquidated damages, and not as a penalty. •It being the express intention of the parties to this contract that said amount of damages shall be ascertained, stipulated and liquidated damages agreed on for our said breach of this contract.

"Palestine Ice, Fuel & Gin Co.,
"Geo. Pessoney, Prest."

[1] In their petition appellees alleged that the machinery was what was "known to the gin trade as a special outfit, and was not such machinery as is usually and customarily carried in stock by factories and machinery houses, and was of such character that the same had to be manufactured and made to order." Appellant specially excepted to said allegation, "because," quoting from its answer, "it fails to set out such facts as show that said order was a special order, and fails to show wherein said contract calls for a special order, and fails to show the items of said machinery which amount to a special order, and fails to show the nature and character of such special order, or that it was a special order." The action of the trial court in overruling the exception is made the basis of an assignment in appellant's brief. The assignment indicates that appellant construed the allegations excepted to as an attempt by appellees to set up a right to recover special damages. We do not understand that to have been the purpose of the allegations. Appellees did not seek, and were not awarded, special damages. They sought and recovered only such damages as were the "ordinary, usual, and commonly to be expected consequences" (2 Mech. on Sales, § 1757) of the refusal by a purchaser to receive, and pay for property he had agreed to receive and pay for.

The trial court found as facts established by the testimony: That appellant made the order as set out above. That to fill it appellees on February 4th ordered the gin outfit therein described of the Continental Gin Company at Dallas. That on May 23d appellant wrote appellees not to ship the machinery it had ordered, unless they were willing to allow a rebate of $200 on the contract price which it claimed appellees' salesman, one James, had agreed to give it. That about June 1st the machinery was shipped from Dallas to appellant at Palestine. That when the machinery reached the latter place appellant refused to receive and pay for it. That thereafterwards, on July 3d, and for 10 consecutive days after that date, appellees, by publication made in a daily newspaper at Palestine, advertised that the machinery would be sold on appellant's account at the freight depot in Palestine of the International & Great Northern Railroad Company on July 15; and sent copies of the advertisement to appellant and its attorneys; that at a sale openly and fairly made in accordance to the advertisement said Continental Gin Company was the highest bidder, and the machinery was sold to it for the sum of $1,200. None of the findings specified above are attacked by any of the assignments in appellant's brief. The court further found as facts established by the testimony: (1) That the machinery ordered by appellant was "a special order outfit, consisting of machinery that had to be manufactured and made up specially to fill" its order, "and was not such machinery as was usually and customarily carried in stock." This finding is attacked by appellant as not supported by the testimony. (2) That appellant's letter of May 23d telling appellees not to ship the machinery unless they were willing to allow the rebate claimed was received by appellees before the machinery was shipped from Dallas, but after it had been manufactured and was practically ready for shipment. This finding is also attacked as not supported by the testimony, appellant's contention being that there was no testimony showing "when the machinery was made, nor when it was ready for shipment." (3) That a rebate as claimed by appellant had not been promised by appellees or their agent James. This finding is attacked as against the preponderance of the testimony. (4) That because the machinery was "a special order lot of machinery, made especially in accordance with the contract sued on, it had no market value, either at Palestine or Dallas, but its value was the same at both points." This finding also is attacked as against the preponderance of the testimony. We think the several findings objected to were authorized by the testimony, and therefore overrule the assignments presenting the objections made to them.

On the facts found by him as stated, the trial court concluded as matter of law: (1) That the sum named in the contract as the damages to be recoverable by appellees in the event of a breach thereof by appellant should be treated as a penalty, and therefore should not be regarded as measuring their damages. (2) That appellees were entitled to recover the sum of $1,102, the difference between the contract price of the machinery and the sum they sold it for, less $98, the cost of transporting the machinery from Dallas to Palestine. Appellant insists that the conclusions as to the law of the case reached by the trial court are erroneous.

[2] In determining whether the sum named in the contract to be paid in the event of a breach thereof should be treated as liquidated damages or as a penalty, the court had a right to consider "the nature of the contract, the terms of the whole instrument, the consequences naturally arising from a breach of its stipulations, and the peculiar circumstances surrounding the transaction." Keeble v. Keeble, 85 Ala. 552, 5 South. 151.

[3] While the correctness of the conclusion be reached that the sum should be treated as a penalty might perhaps be vindicated on the ground that the consequences resulting from the breach complained of authorized it (Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Wilcox v. Walker, 43 S. W. 580; Cowart v. Connally, 108 S. W. 973), we think a sufficient vindication thereof is found in the terms of the contract alone. It will be noted that the gin outfit ordered by appellant consisted of more than 15 parts. It also will be noted that the sum specified in the order to be paid as damages was to be paid by appellant if it should decline to take the machinery or any part thereof. It is obvious from the number of the parts and the price to be paid for them as a whole that, if the parts were of equal value, no one of them was worth more than $160. So, ignoring what is apparent from a glance at the description of the parts in the list, that they were not of equal value, but, on the contrary, that some of the parts were of trivial value compared to the value of others of them, we have a contract stipulating for the payment by appellant for a refusal by it to accept the least valuable of the parts of the same sum it was bound by the stipulation to pay for a refusal by it to accept the most valuable or all of the parts. This plainly shows that the purpose of the stipulation was not to provide compensation to appellees for a breach by appellant of the contract, but was to punish appellant for a breach thereof. 19 A. & E. Enc. Law (2d Ed.) pp. 395, 406, 408, 411; Mansur & Tebbetts Implement Co. v. Tessier Arms & Hardware Co., 136 Ala. 597, 33 South. 818. If appellant had accepted and paid for all except one of the parts, and had refused to accept that one, and if appellees' suit had been to recover as their damages for such refusal the sum named in the contract, it cannot be doubted such a recovery should have been denied to them on the ground that said sum was a penalty. Appellant's position seems to be that, whether the sum stipulated for should be treated as a penalty or not, appellees were not in any event entitled to recover anything in excess of it. It does not cite any authority in support of its contention, and the rule seems to be to the contrary of its claim. 19 A. & E. Enc. Law (2d Ed.) p. 421; Noyes v. Phillips, 60 N. Y. 412; Sherman v. Gray, 11 Cal. App. 348, 104 Pac. 1004; Smith v. Newell, 37 Fla. 147, 20 South. 249. In the work first cited it is said: "where the sum named in a contract to be paid in a breach is held to be a penalty and not liquidated damages, the amount of recovery is only the actual damages sustained. But as only the actual damages, where less than the penalty, are recoverable, so also the amount of the recovery is not limited by the penal sum if the plaintiff shows actual damages in excess thereof. In the New York case, where the actual damages exceeded the sum stipulated, the court said: "It being a penalty and contained in an agreement inter partes, the plaintiff has his election to sue for the penalty or for a breach of the contract. In the latter event he is not limited in the amount of damages to the penalty. The rule would be different in an action on a collateral bond with a penalty conditioned for the performance of the contract. * * * Parties are not released from performing their agreement by inserting a penalty for nonperformance." The conclusion reached in the authorities cited we think is a correct one. The object of the law in awarding damages is to compensate the complainant for loss wrongfully occasioned to him. The justification for denying him a right to recover a sum specified in his contract to be paid in the event of a breach thereof lies in the fact that such sum is in excess of the sum certainly ascertainable (as it is here) by established rules of law necessary to compensate him for the loss he has sustained. In such a case, if the sum stipulated to be paid should be treated as a penalty because it exceeds the actual loss, we see no reason why, when it is less than the actual loss, it should not be treated as a penalty. In the one case to permit a complainant to recover the stipulated sum would be to allow him more than compensation for his loss, and to the extent of the excess punish the defendant; while in the other case to limit the complainant to a recovery of the sum stipulated would be to deny him compensation for his loss, and to the extent of the denial punish him. The purpose of the law would be as entirely defeated in the one case as in the other.

[4] From the facts found by the trial court, it appeared that the ownership of the machinery never passed to appellant. Gammage v. Alexander, 14 Tex. 420; Tufts v. Lawrence, 77 Tex. 529, 14 S. W. 165; Adler v. Kiber, 5 Tex. Civ. App. 415, 27 S. W. 23; Tufts v. Stuart, 23 S. W. 834. Therefore, when appellant by its letter of May 23d countermanded its order for the machinery, it exercised a right it possessed, subject to an obligation it thereby incurred to pay to appellees the damages they thereby suffered. 2 Mech. on Sales, §§ 1091, 1699; 3 Suth. on Damages, § 648. On the receipt of that letter appellees might have treated appellant's repudiation of the contract as a breach of same, and have then maintained an action against appellant for damages. 2 Mech. on Sales, § 1706.

[5, 6] The machinery having then been manufactured and "practically ready for shipment," appellees might have treated it as property belonging to appellant, sold same as on its account, and then recovered as their damages a sum representing the difference between the price it brought and the contract price. Waples v. Overaker, 77 Tex. 10, 13 S. W. 527, 19 Am. St. Rep. 727; 2 Mech. on Sales, § 1645 et seq. But, while appellees

did not have a right after the order was countermanded to do anything which would enhance the damages which thereby then accrued to them (Sonka v. Chatham, 2 Tex. Civ. App. 312, 21 S. W. 948; Tufts v. Lawrence, 77 Tex. 526, 14 S. W. 165; 3 Suth. on Damages, § 648), they were not bound to treat appellant's repudiation of it as ending the contract. They had a right, as they did, to treat the contract as thereafterwards still in force, and to have their damages determined with reference to conditions existing at the time fixed by it for performance. 2 Mech. on Sales, §§ 1707, 1088, 1090; 3 Suth. on Damages, § 648.

[7] The measure of their damages in that event we think was the one applied by the trial court, to wit, the difference between the value at that time of the machinery and the contract price thereof, less any enhancement of that difference due to unauthorized conduct on their part after the order was countermanded. To determine this difference, appellees had a right to sell the machinery, and in that way ascertain its value. Appellant insists, however, that appellees did not have a right to ship the machinery to Palestine, and then sell it. Whether appellees had such a right or not it seems to us would not be of importance, unless it appeared that appellant was injured by its exercise. No testimony showing the machinery to have been worth more in Dallas than in Palestine was offered, and the court found as a fact that it was not worth any more in Dallas than in Palestine. The court further found that the sale in the latter place was fairly and openly made after due notice that it would be made had been given to appellant. These findings are not attacked by any of the assignments. We are inclined to think the question appellant makes was involved in the finding that the sale was fairly made, and, that finding not having been attacked, that we are not called upon to consider it. And, if it is not involved in that finding, we think it need not be determined, because if the machinery was worth in one of the places as much as it was worth in the other of them, and the sale was fairly made, it should not be assumed that appellant was injured because the sale was made in the wrong place.

The judgment is affirmed.