500

**J. C. ENGELMAN, Inc., v. SANDERS NURS-
ERY CO., Inc.**

No. 3923.

Court of Civil Appeals of Texas. El Paso.
March 28, 1940.

Rehearing Denied May 16, 1940.

PRICE, Chief Justice.

This is an appeal from the District Court of Hidalgo County, Texas. It was an action on a contract involving the sale and delivery of 18,700 citrus trees. The trial was to a jury, the case being submitted on special issues, and judgment was entered against defendant in the sum of $19,160.09. Appeal was perfected by the defendant from the judgment and the case is here for review.

The parties, for convenience, will be designated here as they were in the trial court.

This is the second appeal of this case. On the former trial the judgment was in favor of defendant, and plaintiff appealed therefrom to the Court of Civil Appeals at San Antonio. The last opinion of the San Antonio Court in the case appears in the case of Sanders Nursery Company, Inc. v. J. C. Engelman, Inc., 109 S.W.2d 1131. The case was reversed and remanded, and application for writ of error was duly made by the appellee there. This application was dismissed by the Supreme Court. In Judge Slatton's opinion, referred to above, there is set forth the proceedings on appeal prior to that opinion.

We deem an extensive statement of the pleadings unnecessary. The writings alleged to constitute the contract between the parties are attached to plaintiff's petition as exhibits, and the same will be hereinafter copied in full.

Plaintiff alleged the contract, its performance thereof, the breach by defendant, and the damages resultant therefrom.

Defendant's pleadings are somewhat lengthy, but may be summarized as consisting of a general denial, a denial of any definite contract obligation on its part to receive and pay for the 18,700 trees, the subject matter of the litigation; and, further, that if contract there was and a breach thereof by defendant, that, in accordance with the terms of the contract, there had been an accord and satisfaction, in that there was a provision in the contract for liquidated damages and a satisfaction by defendant of said provisions for liquidated damages.

Now will be set out the writings alleged to embody the contract obligation between the parties.

"This contract, this day made and entered into by and between Sanders Nursery Company, Inc., of La Feria, Texas, here-

Smith & Hall, of Edinburg, for appellant.

Paul G. Greenwood, of Harlingen, for appellee.

inafter referred to as Seller, and J. C. Engelman, Inc., of Edinburg, Texas, hereinafter referred to as Purchaser, Witnesseth:

"That in consideration of the mutual promises and agreements herein contained, it is agreed that the Seller does hereby promise to sell to Purchaser and Purchaser does hereby promise and agree to purchase from the Seller, fifty thousand · (50,000) citrus fruit trees which are to be designated as to variety on or before October 1st, 1929, said trees to caliper at time of delivery 5/8 inches or larger and said trees to be from seedlings now growing in Seller's nursery in Lot East 7 acres of Block #2 Black Bros. Sub.

"It is understood and agreed between the parties that the above mentioned trees are to be delivered upon order of the purchaser between December 1st, 1930, and April 1st, 1931, and more specifically as follows; to-wit,

"Fifteen thousand (15,000) trees on or before January 1st, 1931, and an additional fifteen thousand (15,000) trees on or before February 18th, 1931, and the balance of trees to be delivered on or before April 1st, 1931. Purchaser agrees to order not less than one thousand (1,000) nor more than eighteen hundred (1800) trees and Seller agrees to deliver not less than one thousand (1,000) trees nor more than eighteen hundred (1800) trees in any one day. Said trees to be delivered at shed provided for that purpose by Purchaser at the Engelman Ranch in Hidalgo County, Texas.

"It is understood and agreed that the consideration and payment for above mentioned trees is and shall be as follows; to-wit,

"Forty-five cents (45¢) per tree in cash on each Saturday of each week following date of delivery. One promissory note in the amount equivalent to twenty-two and one-half cents (22½¢) per tree due and payable in one hundred twenty days (120) after date. Said notes executed each Saturday night of each week following date of delivery and bearing six per cent (6%) interest from date until due.

"It is further understood and agreed that Purchaser shall and will within fifteen (15) days from date, place in the First National Bank of La Feria, Texas, vendor's lien notes and other good acceptable securities to the value of five thousand and no/100 ($5,000.00) Dollars, to there remain in escrow until the consummation of this contract, unless and until Purchaser fails in anywise in his part of this contract. Upon such failure on part of Purchaser to carry out the terms of this contract, the said five thousand and no/100 ($5,000.00) in securities shall be paid over to the Seller as liquidated damages. Upon the consummation of this contract without failure as above mentioned on part of Purchaser, the said securities shall be returned to Purchaser. The above mentioned five thousand and no/100 ($5,000.00) dollars in vendor's lien notes and or other good and acceptable securities shall in nowise be considered as collateral on any promissory notes or payments herein mentioned. Purchaser shall have the privilege of substituting above mentioned securities as and when it deems it necessary, providing however, such securities are acceptable.

"The Seller further promises and agrees that all of said trees shall be merchantable stock, in healthy condition commercially, and shall furnish certificate of budwood used in budding said trees.

"It is further mutually agreed and understood that in the event any of said trees shall become injured by frost or the elements or by any cause beyond control of the Seller, before delivery, then upon the refunding to Purchaser of all moneys paid under this Agreement, over and above purchase price of trees then delivered, it shall ipso facto be terminated and each party released from all liabilities hereunder; also that the Seller shall not be held responsible for delay in delivery caused by strikes, lockouts, delay in transportation, weather conditions, or causes over which Seller has no control.

"It is further agreed and understood that delivery of trees under this contract shall be such trees of size and quality as are herein provided, now growing in nursery of Seller, located on Lot E 7 A, Block #2, Subdivision Black located on Lot ———, Block ———. It being understood and agreed that Purchaser has first choice and selection of trees in first described nursery and Seller agrees not to sell any trees from first described nursery except in delivering under this contract until this contract has been consummated.

"It is further agreed and understood that the Seller shall not be held responsible for

damages to trees caused by freezing or damage from other causes over which the Seller has no control after delivery thereof.

"It is further agreed that all the terms of this contract shall apply to and inure to and bind the heirs, executors, administrators, assigns and successors of the parties hereto.

"In witness whereof, the parties hereto have hereunto set their hands in duplicate, this 15th day of August, A. D. 1929.

"Sanders Nursery Co., Inc.,
"J. W. Sanders, Sec. & Treas.

"J. C. Engelman, Inc.,
"By L. L. Harwell."

"Edinburg, Texas, R. F. D. No. 1,
"Nov. 18, 1929.

"Sanders Bros.,
"La Feria, Texas.

"Gentlemen:

"Confirming conversation in connection with the contract covering the growing of 50,000 trees for 1930 delivery, please bud same in the following varieties:

2500 — Norris Oranges
2000 — Temple     "
2000 — Tangerine Davey
2500 — Valencia Oranges
2000 — Pineapple   "
5000 — Marsh Pink
1000 — Washington Navels
33000 — Marsh Seedless
_____
50000

"Thanking you, we remain,
"Yours very truly,
"AC:S          "J. C. Engelman, Inc.,
"By A. L. Cramer."

"Edinburg, Texas, R. F. D. No. 1
"Nov. 22, 1930.

"Sanders Nursery Company, Inc.,
"La Feria, Texas.

"Gentlemen:

"Confirming conversation this date, with reference to Tree Purchasing Agreement executed August 15th, A. D. 1929, by and between your Company and the undersigned, under which you agreed to sell and we agreed to purchase during the period of December 1st, 1930 and April 1st, 1931, fifty thousand citrus trees,—

"It Is Now Understood and Agreed that, during this period you will deliver thirty-one thousand three hundred (31,300) citrus trees of the following varieties:—

20,000  Marsh Seedless Grape Fruit Trees
5,000   Pink Marsh  "    "    "    "
1,500   Valencia Orange Trees
600     Navel       "    "
750     Tangerines
1,200   Pineapple Orange Trees
750     Temple      "    "
1,500   Norris
_____
Total——31,300——Citrus Trees..

"Delivery of above mentioned varieties to be made in accordance with the terms of said contract and the number of trees delivered to be proportionately reduced in the same ratio as the total is being reduced.

"It, however, being Understood and Agreed that you will sell and we will purchase the eighteen thousand seven hundred (18,700) trees during the season of December 1st, 1931 and April 1st, 1932, at the same price, under the same terms, conditions and agreements, as are contained in the above described contract, and the variety of the said eighteen thousand seven hundred (18,700) trees to be mutually agreed upon between now and February 1st, 1931.

(Page 2)          –2–
Sanders Nursery Co., Inc., 11/22/30

"It being the intention of this letter that, instead of delivering fifty thousand (50,000) trees under said contract during the coming planting season, you are to deliver thirty-one thousand three hundred (31,300) trees and deliver eighteen thousand seven hundred (18,700) trees one (1) year later and all terms and agreements in said contract, including price, to be governed by said contract.

"This letter is mailed to you in duplicate and we ask that you accept same on one copy, returning the accepted copy to us to be attached to and become a part of said contract.

"Yours very truly,
"J. C. Engelman, Inc.,
"ALC:S          "By A. L. Cramer
"CC
"We accept same, with reference to agreements, conditions and changes in Tree Purchase Agreement, as set out in above letter.

"_____
"_____."

Defendant contended in the trial court, and contends here, that it, under the undisputed evidence, was entitled to have a ver-

dict instructed in its favor. The basis of this contention is that there was no contract obligation on its part to receive and pay for the 18,700 trees in question. To be more specific, that under the letter of November 22, 1930, hereinbefore copied, before there was a perfect contractual obligation with reference to the 18,700 trees involved herein, it was necessary that plaintiff and defendant agree upon varieties of the trees contemplated to be grown and furnished thereunder, and there never was such agreement.

A correct disposition of this contention involves a construction of the writings embodying the contract or contracts between the parties. A consideration of the general situation of the parties at the times involved is permissible and perhaps necessary in the consideration of the question.

Plaintiff was engaged in growing for sale citrus trees for planting in orchards. This process involved the growing of seedlings, and thereafter budding of the seedlings to some other tree and thus producing the variety desired. The growing of seedlings is rather expeditious and a great expense is not involved in the process. The budding is to the seedling from the variety desired, and this budding determines the variety. After budding, if same is successful, it requires approximately a year's growth and attention before the young citrus tree is suitable for transplanting to an orchard.

Defendant was engaged in the planting of tracts of land in Cameron and surrounding counties in the citrus-belt to citrus fruit, and thereafter selling same for a profit. Its operations were rather extensive, and in the prosecution thereof a large number of citrus trees of various varieties suitable for planting were required.

It is elementary that, to constitute a binding contract between parties, it is necessary that the mutual assent of each party to the material terms thereof be expressed therein. Further, if the agreement sought to be enforced as a contract leaves material matter open for further negotiation and · agreement, it is not an enforceable contract on account of not being definite and certain. 10 Tex.Jur., Sect. 13, pp. 27–30.

In discussing the principle that an offer, when accepted, must be capable of creating a definite obligation, Williston, in his great work on contracts, has this to say: "In construing such agreements a court should endeavor, if possible, to attach a sufficiently definite meaning to a bargain of parties who evidently intend to enter into a binding contract and ambiguous words in an obligation should be construed most strongly against the party who used them." Williston on Contracts, Vol. 1, Sect. 37.

The indefiniteness claimed in this contract is that, under the modification of November 22, 1930, as respecting the 18,700 trees, the varieties are not specified. We think, under the evidence, that the variety of the trees to be grown was clearly material to defendant. In the event that plaintiff had sufficient time within which, by budding, to produce a given variety, it was immaterial to plaintiff. Under our understanding of the record one variety could be produced by budding as cheaply as another, the production of seedlings was relatively expeditious and inexpensive.

It will be noted that the contract of August 15, 1929 provides as to varieties, "to be designated as to variety on or before October 1, 1929." As to how this designation is to be made the contract fails to specifically provide.

In our opinion, taking into consideration all the surrounding facts and circumstances as disclosed by the evidence, this contract gave the defendant the privilege of designating the variety of trees. A decision of this question is not necessary because, under the letter of November 18, 1929, the trees desired were designated by defendant. However, unquestionably, on August 15, 1929, defendant deemed it had a binding contract with plaintiff. It will be observed that the contract of that date provides for the deposit of securities in the sum of $5,000 guaranteeing the performance on the part of the defendant of its purported obligations thereunder. Defendant complied with this provision of the contract, not in its exact literal terms, but in a manner in accordance with the subsequent mutual agreement between the parties. This compliance was by permitting plaintiff to retain the sum of $3,000 of money due the defendant. In respect to this obligation of defendant it was no longer executory, but discharged. It would be the height of absurdity to assume that defendant put up $3,000 to guarantee its performance of a contract which it deemed did not bind it in any way.

After the letter of November 22, 1930, it seems that plaintiff took steps to perform its contract with defendant. Plaintiff, unquestionably, budded a large number of seedlings to the respective varieties designated by defendant. The letter of November 22, 1930 was written by defendant and assented to by plaintiff very shortly before the delivery of the trees was to commence under the contract of August 15, 1929. The obligation as to the 31,300 trees under the modified contracts was mutually discharged by the parties.

As has been stated, the question here is as to whether, after the letter of November 22d, there was a contract of perfect obligation for the production and sale of the 18,700 trees. In regard to the situation on and after November 22d, we may say, as we said in regard to the contract of August 15, 1929, defendant evidently considered such a contract existed. After November 22, 1930, it was agreed that plaintiff should retain $1,500 of the money of defendant to guarantee defendant's performance of its obligations under the contract. The only obligations subsisting were on the assumption that there was a contract of perfect obligations between the parties for the production of the 18,700 trees. If by a reasonable construction this purpose or belief can be effectuated, this is the proper construction of the contract.

This contract was the identical contract before the Court of Appeals and the Supreme Court on the former appeal. The first consideration on the merits of the case by the Court of Civil Appeals is reported in 66 S.W.2d 509. Therein the opinion it was impliedly stated that as to whether the provision as to liquidated damages was valid and binding as such under the pleadings was a question of fact. The findings of the trial court on that issue being in favor of defendant, the statement of facts not being before the appellate court, the judgment was affirmed.

The Supreme Court granted plaintiff's application for a writ of error. The opinion of the Commission of Appeals appears in 128 Tex. 102, 96 S.W.2d 68. Under the decision of the Commission of Appeals, that the Court of Civil Appeals erred in striking out the statement of facts, and facts being involved, it was remanded to the Court of Civil Appeals for further consideration. In 109 S.W.

2d 1131, supra, appears the decision of the San Antonio Court on the remand. The decision was that the cause be reversed and remanded to the trial court for a new trial. Defendant made application for writ of error to the Supreme Court. The Supreme Court dismissed this application. It is unfortunate that we have not the advantage of knowing the basis of this dismissal. It may have been that there was a correct judgment or for a lack of jurisdiction. We have not the record before us of this former appeal. It is stated in the brief of plaintiff that defendant sought to sustain the judgment of the trial court in its favor on the ground that the alleged contract was too indefinite to be enforced; that this ground was urged in both the Court of Appeals and the Supreme Court. These statements, we believe, are not challenged by appellant.

The questions before the Court of Appeals in the two considerations of the case were whether the judgment of the trial court should be affirmed, reversed and remanded, or reversed and rendered. It is true, in its last consideration the opinion is largely devoted to a discussion as to whether the provision for damages was a valid provision for liquidated damages, or merely provided for a penalty. It was held clearly and distinctly that as a matter of law same was not necessarily a valid provision for liquidated damages. We think, further, that it was held that such provision was a penalty and not for liquidated damages. If, under any theory presented, a justification of the trial court's judgment was presented, it is clear that the judgment of the trial court would have been affirmed. The correctness of the decision reversing the case was challenged, we feel sure, in the application for writ of error.

We do not mean to hold that we are bound to hold that there were definite enforceable contractual obligations between the parties as to the 18,700 trees after November 22, 1930 on account of the holdings on the former appeal. It may be that this question was not considered from the standpoint here presented. We think, however, that consideration was given by both the Court of Appeals and the Supreme Court to this matter, and that the cause would not have been remanded for retrial had it not been deemed that there were matters of fact

to be determined between the parties. The view that there were such matters of fact is in accord with our view. The question was in the scope of the decision and may have been thereby adjudicated. 1 A.L.R. 725.

If, on and after November 22, 1930, there were perfect obligations existing between the parties with reference to the 18,700 trees, the duty then arises to declare and delineate such obligation or obligations.

One of the circumstances surrounding the agreement of November 22, 1930, was that at that time there was a binding definite contract of sale of 50,000 citrus trees, the varieties of which were definitely known and designated. The writing of November 22, 1930, by its terms, refers to the contract of August 15, 1929, and as to the 18,700 trees therein mentioned, purports to make the same applicable thereto in many particulars. The next to the last paragraph of such letter contains this phrase: "and deliver eighteen thousand seven hundred (18,700) trees one (1) year later and all terms and agreements in said contract, including price, to be governed by said contract." In regard to the 31,300 trees, it purports to govern the delivery in accordance with the terms of the previously existing contract, save that the numbers are to be proportionately reduced. The purchase and delivery of the 18,700 trees during the season of December 1, 1931 and April 1, 1932, were to be at the same price, under the same terms, conditions and agreements as are contained in the above described contract. Then follows the provision claimed to render same nugatory as to the 18,700 trees, "and the variety of said 18,700 trees to be mutually agreed upon between now and February 1, 1931."

Now, we believe, taking into consideration the subject matter of the contract, the situation of the parties, the previous valid contract between the parties, that it was intended thereby to give the defendant the privilege of selecting, prior to February 1, 1931, the varieties of the trees to be furnished. If this be a true construction of the provision, the question still remains, What would be the effect on the obligation if defendant failed to designate the varieties? It is beyond dispute that the defendant made no designation as to varieties to be furnished, and that subsequent to November 22, 1930 there was no further agreement between the parties as to varieties. Defendant contends that the references in the letter under question are to the contract of August 15, 1929, as same existed on that date. Further, that it was not intended that the original contract, as supplemented by the letter of November 18, 1929, should be taken into consideration. Certain it is, that the varieties designated in the letter of November 18, 1929 are incorporated in the letter of November 22, 1930. The number of each variety is reduced, but the varieties are the same in each writing. We think it was the intention of the parties to keep in force and effect, in relation to the 18,700 trees, the contract of August 15, 1929, as same existed immediately prior to November 22, 1930, in all substantial particulars. It is true, the date of the delivery of the 18,700 trees was postponed from one growing season to another; that the privilege of selection was accorded defendant.

Our construction in this respect harmonizes with our construction of the original contract in regard to the designation of the variety of the trees. In fact, in the two writings we think the terms "designation" and "mutual agreement" have practically the same meaning. The same practical effect is arrived at if it is held that the term in the letter, "varieties to be mutually agreed upon," be held too vague and indefinite to effect a change in the provisions of the original contract. The construction we have made, we think, takes into consideration the meaning of all the language used. It is a construction in the light of the primary and secondary rules to aid in the construction of contracts. No issue was submitted by the trial court involving the construction of the contract. The designation of November 18, 1929 was held as a matter of law to govern.

The contract of November 22, 1930 was not an abrogation of the contract as to the 50,000 trees—it was an alteration and modification of the terms of an existing contract. The only material change was an extension of time of delivery of 18,700 trees.

It is our opinion that, under the contract as modified on November 22, 1930, plaintiff was bound to produce the 18,700 trees in question, and defendant, not having designated varieties prior to February 1, 1931, was legally bound by

the designation made in the letter of November 18, 1929 as to the varieties.

As has been before stated, the case was submitted to the jury on special issues. No. 1 was, in substance, as to plaintiff being at all times ready and able, between December 1, 1931 and April 1, 1932, to deliver the 18,700 citrus trees in question. The question specifically enumerating the variety of the trees, and assuming that they were to be the same as designated in the letter of November 18, 1929. The number of each variety was arrived at by subtracting from the number of each variety designated in the letter of November 18, 1929 the number of that variety designated in the modification of November 22, 1930. This issue was answered in the affirmative. No. 2 was as to whether, on June 22, 1932, the date of the former trial, these 18,700 trees were tendered in the contemplated condition to defendant. It was answered in the affirmative. No. 3 was as to whether, during the period from December 1, 1931 to April 1, 1932, defendant failed or refused to accept delivery of the 18,700 trees. This was likewise answered in the affirmative. Nos. 4, 5, 6 and 7 were not answered. Nos. 4, 5 and 6 were intended to submit the issue as to liquidated damages. No. 7 was as to whether, after defendant failed and refused to accept the trees in question, that plaintiff was ready, able and willing to deliver same to defendant until such trees became worthless as nursery stock.

This verdict was received and accepted by the court. Both parties moved for a judgment thereon. The motion of plaintiff was granted, and the court, in assessing the damages, estimated the costs of delivery and immediate preparation of delivery by balling at 8 cents per tree, and gave plaintiff judgment for the trees at 90 cents per tree, deducting from such total the cost of balling and delivery and the $1,500 held by plaintiff. The judgment aggregates the sum of $19,160.09. On the amount found due the court added interest at six per cent per annum.

■ The trial court seems to have adopted the theory that the issues in relation to liquidated damages were immaterial. We believe this action was correct. The question of liquidated damages is thoroughly discussed in the opinion of Judge Slatton, appearing in 109 S.W.2d 1131, supra. We have briefly heretofore adverted to that decision. In our opinion the discussion of the issue of liquidated damages is adequate, and we adopt same. Under the undisputed evidence the issue as to liquidated damages passed from the case.

The question as to whether or not the proper measure of damages was applied in this case is one of some difficulty. Further, if the correct legal measure of damages was applied, it was not necessary, in order to apply same, to submit some issue relative thereto to the jury.

■ In determining the proper measure of damages herein a brief consideration of the nature of the contract in question may be helpful. This was not a sale, it was a contract for a future sale. An essential of a contract of sale is the vesting of the title in the buyer.

■ In the contemplation of both parties the trees in question were to be grown and processed and then dug and delivered to the buyer. There was a designation of the place where the seedlings were growing, and it was contemplated that these seedlings were to be budded. However, in our opinion, until the budded seedlings were dug and tendered to the buyer, there could be no such segregation as would definitely appropriate the trees in question to the contract. Under the evidence the trees were growing with a large number of the same variety. Contract and Sale, Simkins, pp. 804, 822; Mechem on Sales, Vol. 1, Sec. 763; Gammage v. Alexander, 14 Tex. 414; Tufts v. Lawrence, 77 Tex. 526, 14 S.W. 165; Ellis v. Bonner, 80 Tex. 198, 15 S.W. 1045.

■ In the ordinary contract of sale, where the buyer is in default, the seller's measure of damages is the purchase price. The title having vested in the buyer, it is just and right that his obligation should be fulfilled by payment of the purchase price. It amounts, in effect, to the enforcement of a specific performance of his obligation. This is true, even though the delivery is constructive only. Waples & Co. v. Overaker & Co., 77 Tex. 7, 13 S.W. 527, 19 Am.St.Rep. 727; Mechem on Sales, Vol. 2, 1674.

■ In cases where the title has not passed on the date of the breach, the action is for damages. The contract price as such is not the measure of damages. It may, however, have great bearing on the amount of damages. An action for damages and not the purchase price in this class of cases is the remedy, although the

seller refuses to accede to an anticipatory breach by the buyer, in which event, the damages are assessed as of the date performance by the buyer is due.

The case of Waples et al. v. Overaker et al., 77 Tex. 7, 13 S.W. 527, 19 Am.St.Rep. 727, is an instance of the application of the measure of damages in a sale where title had passed. Plaintiff therein exercised the right of resale. The contract price seems to have been credited with the resale price, less reasonable expenses. In Tufts v. Lawrence, 77 Tex. 526, 14 S.W. 165, title to the goods had not passed. It is held that the measure of damages was the difference between the contract price and the value of the goods in the condition same were on the date that the vendee notified vendor of intention not to accept the goods ordered when tendered. The situation in that case was that plaintiff had already incurred practically the full cost of his compliance with the contract. Also the case announces the principle that where goods are ordered to be manufactured or grown prior to performance the buyer may countermand the order. In the case of Texas Seed & Floral Co. v. Chicago Set & Seed Co., Tex.Civ.App., 187 S.W. 747, the onion sets were practically produced when the order was repudiated. Same were sold by the seller on order of the vendee, brought their then full market value, and such value was applied on the damages, less the expenses of sale and storage. It is true that the purchase price, for all practical purposes, was taken as the measure of damages. In all such cases where the obligation of the seller has been fulfilled in its entirety, and no more expense or labor is necessary, the contract price would represent his damages, less the reasonable value of the goods on hand. However, the action is for damages and not for the purchase price. In Texas Seed & Floral Co. v. Chicago Set & Seed Co., supra, it was not stated whether the title to the onion sets had passed before the breach, or otherwise. It does not appear whether the sets unharvested at the time of the repudiation were growing with other sets. In support of the holding, Waples v. Overaker, supra, is cited. The full value of the onions, whether same were the property of defendant or of plaintiff, was applied to the damages. The result was, plaintiff had the benefit of the value of the onions as did the defendant. We do not regard this case as modifying the rule for damages laid down in Tufts v. Lawrence, supra. In fact, the case arguendo recognizes the principle that after notice the seller is not authorized to incur further expense on behalf of the buyer. The following additional cases might be cited on the point that prior to the date of performance where goods are ordered to be manufactured or grown the title does not pass at least until the date of performance: Gammage v. Alexander, 14 Tex. 414; Adler v. Kiber, 5 Tex.Civ.App. 415, 27 S.W. 23; Tufts v. Stuart, Tex. Civ.App., 23 S.W. 834; Palestine Ice, Fuel & Gin Co. v. Walter Connally & Co., Tex.Civ.App., 148 S.W. 1109. These cases also support the proposition that the seller does not have the right after the countermand of the order to do anything which would enhance the damages which then accrued to him. See also Sonka v. Chatham, 2 Tex.Civ.App. 312, 21 S.W. 948. The seller has the right, however, to treat the contract as in force and to have damages determined with reference to conditions existing at the time fixed for performance. Mechem on Sales, Vol. 2, §§ 1707, 1088–1090.

The fundamental rule in assessing damages is compensation. In case of a breach of contract the value of performance to the plaintiff is the fundamental issue.

The case of Tufts v. Lawrence, supra, does not lay down a formulistic and rigid rule to be applied to all cases where goods are to be produced and there is a repudiation before title has passed, or the performance is due. It was a just rule applied to the facts involved. It is conceivable that a rigid application of the rule might give the seller an advantage above complete performance by the buyer, in that the seller might have expended very little on producing the goods, and to perform his original obligation it would require a good deal more expense. In such a case, this measure of damages would not apply. In the case the court had before it the seller had practically complied with his contract. In a case where the contract was entirely unexecuted, the contract price, less the cost of compliance by the seller, would represent the just measure of damages.

Here it seems the defendant gave notice in August, 1931 that it did not intend to receive the trees contracted for. The court did apply in a measure the rule as laid down in Tufts v. Lawrence. Credit was

given on the contract price of 8 cents per tree, representing what was held to be the reasonable cost of digging, balling and delivering the trees. It does not appear from the evidence if expense and care had to be expended on the trees during the period from August 1, 1931 to December 1, 1931. The value of the trees on August 1, 1931 does not appear. There is evidence as to the value of the trees during the growing season of 1931–1932. There is likewise evidence that the plaintiff could not sell the trees at any price. Whether these trees had or had not a value on the date of the repudiation or on the date of performance is a disputed fact under the testimony. The theory of the trial court must have been that on December 1st, upon tender of performance, the title to the trees vested in the defendant. We believe this is erroneous, from the fact there was never a segregation of the specific trees contemplated in the contract. Under the evidence these trees were growing with a number of others of the same general class and character. To our mind, an analogy to an unsegregated mass of goods is presented. In such a case title does not pass until there is a definite segregation and appropriation of the goods to the contract. We are not unmindful of the fact that until ready for planting the best place to preserve the value of these trees was in the nursery. The digging and balling of same at least would have rendered their availability as nursery stock shorter than it otherwise would have been.

▇▇ The issue of the value of the trees, in our opinion, should have been submitted to the jury, and perhaps likewise the reasonable cost of digging, balling and preparing for delivery. If additional expense was entailed in keeping the trees from August to December that should be ascertained. The value of the trees as of the date of the repudiation, the reasonable cost of digging, balling and delivery, the expense, if any, of the care of the nursery stock from August to December should be aggregated, subtracted from the contract price, and the balance would represent the measure of plaintiff's rights.

It is ordered that the case be reversed and remanded.

### On Motion for Rehearings.

Appellant and appellee have each filed a motion for rehearing herein. Appellant urges that we reverse our former holding

and render judgment in its favor. Appellee urges that its motion be granted and the judgment of the trial court affirmed. We shall first consider the motion of appellant.

Since the writing of the original opinion the writer has examined appellant's brief and motion for rehearing on the former appeal of this case, wherein it was defendant in error. In its brief there the first counter proposition urged is in substance that the judgment in its favor should be affirmed because of the indefiniteness of the purported contract as to the 18,700 trees. By cross-assignment the same matter was urged; its motion for a rehearing was to the same tenor and effect; in a written argument filed in support of its motion this is the only point argued, although rights are reserved to rely on all matters urged in the motion. The application for writ of error is not available. A careful reading of the three opinions of the San Antonio Court of Civil Appeals on the former appeal, together with the opinion of the Supreme Court, compels the conclusion that the trial was on the merits. See 59 S.W.2d 954; 66 S.W.2d 509; 128 Tex. 102, 96 S.W.2d 68; 109 S.W.2d 1131. It is true that the judgment of the trial court was based on the holding that there was provision for liquidated damages in the contract, and there was an accord and satisfaction of the cause of action asserted by plaintiff in error there. However, the trial court, referring to the same contract we have here, found: The said contract was breached as alleged by plaintiff; further, no facts were introduced at the trial of said cause from which the correct measure of damages could be discovered. Our understanding of appellant's position is that there was no contract breached as to the 18,700 trees; that as to same the only agreement was that there should be made in the future a contract with reference thereto, the terms of this future contract not being specified. This same position was strenuously and clearly maintained on the former appeal. There is no question but that the writings here involved were introduced in evidence on the former appeal.

▇▇ In Judge Slatton's opinion, 109 S. W.2d 1131, 1133, supra, the scope of the decision is indicated as follows: "We are therefore called upon to determine whether or not the trial court erred in sustaining the special exception of defendant in error, which was directed to the second amended original petition of plaintiff in error, on

510

the ground that such pleading and the contract exhibited to the pleading showed on their face to be liquidated damages, as distinguished from a penalty, *and whether or not the trial court erred in denying any recovery to the plaintiff in error on the pleadings and proof, as shown by the record."* (Italics ours.)

There inheres in and is implied in the discussion of the question of liquidated damages or penalty the finding that there is a valid contract. A consideration of the question involves all the terms of the purported contract. It is a consideration as to the limit and extent of the remedy on the contract involved. If the contract as a whole will not support a recovery, it would indeed be futile to discuss and consider the consequences of a breach thereof. On an indefinite contract neither liquidated damages nor the damages as contemplated by law resulting from a breach can be recovered—in short, there is no contract to be breached. Plaintiff in error there, in order to be entitled to a recovery, had the burden of establishing a prima facie case in addition to establishing that the $1,500 in question was a penalty. Unless this burden was met it seems to us the judgment of the trial court would have been affirmed.

We will again consider briefly the question as to whether the stipulation as to the $1,500 was a provision for liquidated damages or a penalty. The original contract of August 15, 1929 was modified by the agreement for the retention of $3,000 by appellee, and sometime after the modification of November 22, 1930 the deposit with appellee was reduced to $1,500. Conceding the provision in the original contract of August 15, 1929 applied to the deposits insofar as reasonably applicable thereto, we think this was a provision for a penalty. Palestine Ice, Fuel & Gin Co. v. Walter Connally & Co., Tex.Civ.App., 148 S.W. 1109; Sanders Nursery Co. v. J. C. Engelman, Tex.Civ.App., 109 S.W.2d 1131.

The admissible testimony on the trial of this case here to our minds fortifies this construction.

We hold as a matter of law that the $1,500 in question was a penalty.

Appellant's motion for rehearing is overruled.

We have given careful consideration to the motion for rehearing of appellee. It is still our view that the trial court erred in holding as a matter of law that the correct measure of damages was the contract price,

less the cost of balling and delivering the trees. There was evidence that the trees had a market value on the dates their delivery was due. We do not think the evidence is conclusive on the question of due diligence used in attempting to realize this value. A careful consideration has been given to the authorities cited by each party on this issue, and we still adhere to the views expressed in the original opinion.

The motion of appellee is overruled.